Randy Farrel KELLY, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–09–00992–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 27, 2011.

---

Kyle Johnson, Houston, for Appellant.

Carol M. Cameron, Houston, for the State.

Panel consists of Justices ANDERSON, FROST, and BROWN.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant Randy Farrel Kelly, appeals his conviction for possession of methamphetamine with intent to deliver, claiming that the trial court erred in denying his motion to suppress. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the felony offense of possession of a controlled substance, methamphetamine weighing between four and two hundred grams, with intent to deliver. The primary offense was enhanced by two prior felony convictions.

Appellant filed a motion to suppress evidence he claimed was illegally obtained and any statements he made during his detention. At a hearing on the motion, the parties stipulated that officers searched appellant's vehicle during a traffic stop without a warrant. When viewed in the light most favorable to the trial court's ruling,[1] the evidence from the hearing reflects the following:

Deputies with the Harris County Sherriff's Office were conducting surveillance as part of a narcotics investigation that focused on appellant. The deputies believed appellant's red pick-up truck was parked at a nearby residence and that appellant was in possession of methamphetamine. One deputy sat in a marked patrol unit that was stopped along a roadway when he saw a vehicle matching the description of appellant's vehicle traveling toward him. He observed that the vehicle had no front license plate and that the occupant inside wore no seat belt. He radioed the other deputies assisting in the investigation about the traffic violations that he observed. As the vehicle turned left, the deputy observed the vehicle's rear license plate and conducted a computer search of the vehicle's registration. He learned that appellant was the registered owner and informed other officers by radio of the license-plate number.

Deputy Shattuck learned of the traffic offenses via radio, observed the same vehicle approaching him, and also noticed the

vehicle had no front license plate and that the driver wore no seat belt. Deputy Shattuck pursued and stopped the vehicle at a nearby service station. Deputy Shattuck observed the driver reaching around inside the truck as if reaching toward the passenger side. Based on his training and experience, Deputy Shattuck believed that such movements are indicative of an occupant attempting to conceal or retrieve items.

Deputy Shattuck approached the vehicle and asked the driver for his driver's license. Deputy Shattuck noticed that the driver seemed nervous and that his hands shook when he produced his identification. Deputy Shattuck saw that the driver continued to look through his wallet after producing his driver's license, as if looking for something else. When the deputy learned appellant's identity, he asked appellant to exit the vehicle and asked appellant a few questions. Appellant told the deputy that he had been visiting a friend's home in the neighborhood. Around this time, other officers arrived on the scene. Deputy Shattuck conducted a computer check of appellant's driver's license and discovered appellant had a criminal history involving narcotics, but no outstanding warrants.

Deputy Shattuck testified that he developed suspicion about whether appellant possessed any contraband or weapons based on information gathered before the traffic stop, appellant's furtive movements inside the vehicle, and appellant's nervous demeanor. In response to the deputy's questions, appellant denied possessing narcotics or other contraband. When Deputy Shattuck asked appellant for consent to search the vehicle, appellant stated, "Sure. I don't have anything in there." After obtaining consent, Deputy Shattuck asked

---

1. *See Baldwin v. State,* 278 S.W.3d 367, 369 (Tex.Crim.App.2009).

appellant to have a seat in the back of a patrol unit, citing safety reasons. Appellant agreed and voluntarily walked to the patrol unit, opened the door, and sat in the backseat of the patrol unit with the windows rolled down because of the warm weather. According to the deputies' testimony, appellant was not handcuffed or under arrest at this time.

Deputy Shattuck and two other officers searched appellant's vehicle and discovered several plastic bags containing a substance that was later determined to be "crystal meth" and a plastic bag containing a "cutting agent" inside a false bottom of a cup that was located in the truck's center floor console. One deputy informed appellant about finding the narcotics, and appellant indicated that the substance belonged to him. When the deputy asked appellant if there were any more narcotics in the vehicle, appellant told the deputy that there were two more plastic bags of methamphetamine behind the bristles of a hairbrush. The deputy testified that his investigation was still ongoing and that appellant was not handcuffed, informed of his rights, or arrested at the time the deputy learned of the narcotics in the hairbrush. The deputies located the narcotics in a hairbrush that was partially hidden between the driver's seat and the passenger's seat. The deputies then handcuffed appellant and placed him under arrest.

Appellant testified at the hearing and acknowledged that his vehicle had no front license plate at the time he was pulled over; however, he claimed to have been wearing a seat belt at the time of the stop. According to appellant, when asked for his consent to search the vehicle, appellant asked whether he had a choice, to which the deputy replied, "Not really." Appellant testified that he then stated, "Well, you know, I can't stop you, you know."

On cross-examination, appellant admitted that he did not expressly say "no" when he was asked for consent. Appellant testified that he did not tell the deputies to stop searching his vehicle. Appellant claimed that during the search he was handcuffed and placed in the back of the patrol unit; appellant stated that he believed he was not free to leave at the time.

The trial court denied appellant's motion, finding that appellant was stopped pursuant to a legitimate traffic stop for having no front license plate and that the length of the detention was reasonable. The trial court found that appellant knowingly and voluntarily gave the deputies consent to search his vehicle, which applied to all of the narcotics found as a result of the search. The trial court deemed that appellant was in a custodial situation after the deputies discovered the narcotics inside the cup, and that appellant was being interrogated, was not free to leave, and was placed under arrest. The trial court found that "[t]hough I don't think that has any affect [sic] at all on them ultimately finding the second set of drugs, I do think it has bearing on whether or not that statement ultimately would have been admissible."

Appellant entered a plea of "guilty" and judicially confessed to committing the charged offense. Appellant entered a plea of "true" to the two enhancement paragraphs. After finding appellant guilty of the charged offense and finding the enhancement paragraphs to be true, the trial court sentenced appellant to twenty-five years' confinement.

### ISSUES AND ANALYSIS

Appellant, in three issues, challenges the trial court's denial of his pretrial motion to suppress. We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of

review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). At a suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007). We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor, but review de novo the trial court's application of the law to the facts as resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *See Guzman*, 955 S.W.2d at 89. When, as in this case, there are no written findings of fact in the record, we uphold the ruling on any theory of law applicable to the case and presume the trial court made implicit findings of fact in support of its ruling so long as those findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex.Crim. App.2000). We view a trial court's ruling on a motion to suppress in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24. If supported by the record, a trial court's ruling on a motion to suppress will not be overturned. *Mount v. State*, 217 S.W.3d 716, 724 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

**Did the State prove by clear and convincing evidence that appellant consented to a search of his vehicle?**

In his first issue, appellant asserts the State failed to meet its burden of proving by clear and convincing evidence that appellant consented to the officers' search of his vehicle.

 Warrantless searches are "per se unreasonable," unless they fall under one of a few specific exceptions. *Rayford v. State*, 125 S.W.3d 521, 528 (Tex.Crim.App. 2003) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); *Reasor v. State*, 12 S.W.3d 813,

817 (Tex.Crim.App.2000). Consent to search is one of the well-established exceptions to the constitutional requirements that a police officer have both a warrant and probable cause before conducting a search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Texas law requires the State to prove voluntariness of consent to search by clear and convincing evidence, rather than by a mere preponderance of the evidence. *Reasor*, 12 S.W.3d at 817. To be valid, consent to search must be positive and unequivocal and must not be the product of duress or coercion, either express or implied. *Id.* at 818. Consent to search is not shown by acquiescence to a claim of lawful authority. *Allridge v. State*, 850 S.W.2d 471, 492–93 (Tex.Crim.App.1991).

 The trial court must look at the totality of the circumstances surrounding the statement of consent to determine whether consent was given voluntarily. *Id.* A showing that a suspect has been warned that he does not have to consent to the search and has a right to refuse is of evidentiary value in determining whether a valid consent was given. *See Johnson v. State*, 68 S.W.3d 644, 653 (Tex.Crim.App. 2002). But the absence of such information does not automatically render an accused's consent involuntary. *Id.* Other facts for consideration include the accused's age, education, and intelligence, the constitutional advice given to the accused, the length of detention, the repetitive nature of questioning, and the use of physical punishment. *See Reasor*, 12 S.W.3d at 818. An officer's testimony that consent was voluntarily given can be sufficient evidence to prove the voluntariness of the consent. *See Martinez v. State*, 17 S.W.3d 677, 683 (Tex.Crim.App.2000).

 In considering the totality of the circumstances, the record shows that clear and convincing evidence supports the trial

court's finding that during the traffic stop appellant voluntarily consented to the search. *See Reasor*, 12 S.W.3d at 818. Deputy Shattuck testified that appellant stated, "Sure. I don't have anything in there," in response to his request for consent. The circumstances do not suggest that appellant's consent was the product of duress or coercion or was otherwise involuntary. *See id.* (considering whether accused was handcuffed, arrested, or held at gunpoint in determination of whether the accused consented to a search). Appellant argues that Deputy Shattuck's testimony about appellant's consent does not really "ring true" and that appellant's own testimony about not consenting sounded "like a more realistic exchange." Appellant refers to his age of fifty-six years and his having been in a penitentiary four times for convictions dealing with methamphetamine, for support that he would not have allowed officers to search his vehicle if he had been given a choice. But, as sole judge of the witnesses' credibility at the suppression hearing, the trial court could have decided to believe the officers' testimony and disbelieve appellant. *See Wiede*, 214 S.W.3d at 24.

Appellant also points to the following circumstances to support his assertion that any consent was not positive and unequivocal:

- The officers were involved in an operation solely dedicated to stop and search appellant, an objective that the officers successfully attained.
- Deputy Shattuck did not use the consent forms that were in his possession, citing less expectation of privacy of a vehicle.

- Only one of the three officers on the scene, Deputy Shattuck, heard appellant give consent.
- The prosecutor's use of the term "acquiesce" when arguing that appellant consented to the search implies that appellant passively consented as opposed to offering positive and unequivocal consent.[2]

Appellant, however, provides no citation to legal authority or argument in support of how these circumstances affect a determination of whether he gave consent. TEX. R.APP. P. 38.1(i). Nor does appellant show that the record lacks clear and convincing evidence to support the trial court's determination that consent was voluntary.

Viewing the record and all reasonable inferences in the light most favorable to the trial court's ruling, we conclude the record supports a determination that appellant voluntarily consented to the deputies' search of his vehicle. *See Reasor*, 12 S.W.3d at 818. We overrule appellant's first issue.

**Were the officers justified in detaining appellant?**

▇▇▇ In his second issue, appellant asserts that the deputy's reason for stopping appellant was "so pretextual as to render it a sham so that no amount of time spent on it is reasonable." According to appellant, the officers abandoned the traffic investigation almost immediately after stopping him, and any further detention was unreasonable.

▇▇▇ To establish grounds for the suppression of evidence for alleged violations under the Fourth Amendment, a defendant bears an initial burden to produce evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158

---

**2.** Appellant refers to this factor as an "observation" and acknowledges that the prosecutor's argument is not evidence.

S.W.3d 488, 492 (Tex.Crim.App.2005). This burden may be satisfied upon a showing that a search or seizure occurred without a warrant. *Id.* The burden then shifts to the State to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* The parties in this case stipulated that the deputies did not have a warrant; therefore, the State bore the burden of establishing the reasonableness of the warrantless detention. *See id.*

■■■■ Appellant argues that the initial stop was pretextual and that the officers abandoned the purpose of the stop for the traffic offenses immediately without justification to conduct a narcotics investigation. An objectively valid traffic stop is not unlawful just because the detaining officer has some ulterior motive for making the stop. *Crittenden v. State,* 899 S.W.2d 668, 674 (Tex.Crim.App.1995). An officer may stop and detain a person if the officer has reasonable suspicion that a traffic violation was in progress or had been committed. *McVickers v. State,* 874 S.W.2d 662, 664 (Tex.Crim.App.1993); *see Valencia v. State,* 820 S.W.2d 397, 400 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd). The Texas Transportation Code provides that a person commits an offense if the person operates a motor vehicle on a public highway without a front license plate. *See* TEX. TRANSP. CODE ANN. § 502.404(a) (West 2007). As reflected in the record, it is undisputed that appellant's vehicle had no front license plate. Therefore, Deputy Shattuck had reasonable suspicion to stop appellant for the traffic violation and conduct an investigation of the traffic-law infraction. *See McVickers,* 874 S.W.2d at 664.

■■■■ A routine traffic stop is a detention and must be reasonable. *Davis v. State,* 947 S.W.2d 240, 245 (Tex.Crim.App. 1997). The general rule is that an investigative stop can last no longer than necessary to effectuate the purpose of the stop. *Kothe v. State,* 152 S.W.3d 54, 63 (Tex. Crim.App.2004). During a traffic stop, law-enforcement officers may request information such as a driver's license and vehicle registration, and may conduct a computer check of that information. *See id.* After the computer check is completed, and the officer learns that the driver has a valid license and no outstanding warrants and that the vehicle is not stolen, the traffic stop investigation is fully resolved. *See id.* at 63–64. There are no rigid time limitations on these detentions. *See Kothe,* 152 S.W.3d at 64. But, once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition" for unrelated criminal activity. *See Davis,* 947 S.W.2d at 243. Once an investigation of a traffic violation is concluded, an officer may no longer lawfully detain a driver unless there is reasonable suspicion to believe another offense has been or is being committed. *See Davis,* 947 S.W.2d at 245. In determining whether the detention of appellant was reasonable, we consider whether the officer diligently pursued a means of investigation that was likely to confirm or dispel his suspicions quickly, during the time necessary to detain the driver. *See Kothe,* 152 S.W.3d at 64.

■■■ Appellant asserts that any suspicion Deputy Shattuck developed regarding appellant's possession of narcotics was based on information he learned in the narcotics investigation prior to the traffic stop. Deputy Shattuck testified that his suspicion was aroused in part by information gleaned from the narcotics investigation before the stop, but also by appellant's furtive movements inside the vehicle and appellant's nervousness after he was stopped. A person's nervous behavior and furtive movements may constitute factors

in determining reasonable suspicion. *See Lippert v. State*, 664 S.W.2d 712, 721 (Tex. Crim.App.1984) (holding that no justification for detention existed when the accused made no furtive gestures or sudden movements); *LeBlanc v. State*, 138 S.W.3d 603, 608 n. 5 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (providing that furtive movements during a police stop may be a factor giving rise to reasonable suspicion); *Simpson v. State*, 29 S.W.3d 324, 329 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (indicating that nervous behavior, among other things, may give rise to reasonable suspicion).

 Asking questions, including asking for consent to search a vehicle, during a valid traffic stop is not a separate detention. *See Levi v. State*, 147 S.W.3d 541, 544 (Tex.App.-Waco 2005, pet. ref'd). In this case, Deputy Shattuck asked appellant for his driver's license and questioned him about his whereabouts, which is standard procedure for any traffic stop. *See State v. Cardenas*, 36 S.W.3d 243, 246 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd) (providing that an officer may ask about a driver's destination and purpose of travel during a valid detention). Because Deputy Shattuck's suspicions were aroused, in part, by appellant's furtive movements inside the vehicle and appellant's nervousness after being stopped, Deputy Shattuck's questioning about whether appellant possessed narcotics was reasonably related to the traffic stop investigation. *See id.* The questioning was related to matters within the scope of the traffic stop, especially given the fact that Deputy Shattuck learned of appellant's

criminal background involving narcotics and asked appellant about this information; the stop was not completed when the officer obtained appellant's consent to search the vehicle. *See Magana v. State*, 177 S.W.3d 670, 674 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *Freeman v. State*, 62 S.W.3d 883, 888 (Tex.App.-Texarkana 2001, pet. ref'd). During this lawful traffic stop, appellant gave valid consent to search the vehicle. *See Magana*, 177 S.W.3d at 673-74. The traffic investigation was not unduly prolonged to obtain consent because the deputy quickly sought consent to search, and appellant readily consented when asked.[3] *See id.* Any further detention was to effectuate the search pursuant to appellant's valid consent and needed no other justification. *See id.*

 As evidence that the officers abandoned the traffic investigation in lieu of a narcotics investigation, appellant points out that he did not receive a written traffic citation, Deputy Shattuck did not ask for proof of insurance as part of the traffic stop, and Deputy Shattuck did not discuss the traffic violations with him. Deputy Shattuck could not recall asking for appellant's insurance card and testified that he informed appellant why he stopped appellant's vehicle. Although the trial court was free to consider the failure to issue a written citation in determining credibility of witness testimony, this evidence does not mean the officers lacked reasonable suspicion as a matter of law. *See Overshown v. State*, 329 S.W.3d 201, 205-06 (Tex.App.-Houston [14th Dist.] 2010, no pet. h.). Rather, this was evidence for the

---

3. On this basis, appellant's reliance on *Herrera v. State*, 80 S.W.3d 283 (Tex.App.-Texarkana 2002, pet. ref'd), is factually distinguishable because in the case under review, Deputy Shattuck did not detain appellant for any length of time to wait for a second officer, as occurred in *Herrera. See id.* at 289 (involving

prolonged detention while a Spanish-speaking officer arrived on scene). Furthermore, as in this case, an officer may request consent to search during a lawful traffic stop. *See Magana*, 177 S.W.3d at 673-74 (disagreeing with holding in *Herrera* on these grounds).

factfinder to consider and weigh in making its factual determinations.

■ Additionally, appellant asserts that assuming *arguendo* that he gave consent, once the officers abandoned the investigation for the traffic violation and instead pursued a narcotics investigation, appellant's detention before he consented to a search was unreasonable. But, we already have determined that the detention was supported by reasonable suspicion for the traffic infraction. When, as in this case, consent to search is obtained during the scope of a lawful detention, the consent is valid. *See Cardenas*, 36 S.W.3d at 247. We overrule appellant's second issue.

**Did the trial court err in refusing to suppress evidence of the additional narcotics found in the vehicle under article 38.23 of the Texas Code of Criminal Procedure?**

In a third issue, appellant argues that trial court should have suppressed evidence of the narcotics found inside the hairbrush because they were found as a result of appellant's response during the officers' custodial interrogation of appellant when he had not been advised of his *Miranda* rights.[4] Appellant claims, "The trial court, however, held that, even though appellant was not advised of his rights under *Miranda v. Arizona* [...] prior to this second round of questioning, it did not have 'any affect at all on them ultimately finding the second set of drugs.'" Appellant has not cited, and an independent review of the record does not show that, the trial court made any findings regarding appellant's *Miranda* rights.

The trial court made the following findings as relevant to this issue:

[TRIAL COURT]: ... And based on the testimony in large part specifically of the defendant, the Court will find that the consent that was given was knowing and voluntary. I think the consent was valid. And, so, I'm not going to suppress any of the contraband that was found inside the car. And I think that the consent being found valid will suffice for the recovery of all of the contraband that was found.

But I will make the following finding: With regard to the conversation that was made a little bit later, after the finding of the first piece of—I think it was cocaine, or whatever it was—the substance, the police officer went back to have a conversation with the defendant, showing him what had been found. I believe at that point in time the detention did turn into a custodial situation, the defendant was not free to leave. They found what they believed to be contraband. I believe at that point in time the defendant, in fact, was placed under arrest.

. . .

At the time that the—I believe it was Officer Savell walked up to him and showed him what had been found and asked, I think, something to the effect of, "Is there anything else that you want to tell me about?"

*Though I don't think that has any affect [sic] at all on them ultimately finding the second set of drugs, I do think that it has a bearing on whether or not that statement ultimately would have been admissible.*[5] So I believe he was in

---

4. Appellant does not contest the admissibility of his statement to the deputies indicating the location of the narcotics; rather, he challenges the admissibility of the narcotics found in the hairbrush.

5. Emphasis added.

custody at that time and was being interrogated. And it would appear at first glance, he would be entitled to all of the 38.22 rules to comply. However, I think there's an exception under [38.22(3)(c) ] that would allow that statement to be admissible anyway.

Appellant claims that the trial court improperly relied upon Texas Code of Criminal Procedure article 38.22(3)(c) in admitting the evidence of the narcotics found in the hairbrush. As reflected in the trial court's express findings set forth above and contrary to appellant's assertion, under this provision, referred to as the exclusionary rule, the trial court admitted appellant's statement made to the deputies during custodial interrogation, but did not rely upon this provision to admit evidence of the narcotics found in the hairbrush. Appellant's arguments in this regard lack merit.

In contending that article 38.22(3)(c) did not apply to the narcotics, appellant asserts that the "second batch of methamphetamine was found as a result in violation of his rights under *Miranda*" To the extent appellant claims that the narcotics within the hairbrush should have been suppressed under article 38.23 of the Texas Code of Criminal Procedure, he has provided no argument, citation, analysis, or legal authority in support of this assertion. To present an issue for appellate review "the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1(i). Appellant has not presented a single argument or citation in support of this issue or addressed any of the governing legal principles or applied them to the facts of this case. *See King v. State,* 17 S.W.3d 7, 23 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Although appellant's brief contains a sentence claiming that the narcotics in the hairbrush should have been excluded under article 38.23, conclusory statements which contain no citation to authority present nothing for appellate review. *Id.; see also Vuong v. State,* 830 S.W.2d 929, 940 (Tex.Crim.App. 1992). We overrule appellant's third issue.

### CONCLUSION

The trial court did not abuse its discretion in denying appellant's motion to suppress. The State met its burden of proving by clear and convincing evidence that appellant consented to the officers' search of his vehicle after a legitimate traffic stop. The officers were justified in detaining appellant after the initial stop to effectuate the search based on appellant's valid consent.

The trial court's judgment is affirmed.