

## NUMBER 13-10-00638-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**JOSHUA SANTANA TIMMONS,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 329th District Court
### of Wharton County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Chief Justice Valdez

Appellant, Joshua Santana Timmons, pleaded no contest to felony possession of a firearm by a felon. *See* TEX. PENAL CODE ANN. § 46.04 (West 1999). The trial court sentenced Timmons to confinement in the Institutional Division of the Texas Department of Criminal Justice for six years with one hundred and thirty-nine days credit for time

served.  On appeal, Timmons challenges the trial court's denial of his motion to suppress.  We affirm.

## I. BACKGROUND

On March 12, 2010, El Campo Police Officers, Clint Savino and J.D. Gingles, were stationed under an overpass monitoring a frontage road stop sign when they stopped a white Buick at the 1400 block of Palacios Street El Campo, Texas.  Officer Savino testified that the officers stopped the vehicle because it failed to stop at the designated point at the stop sign intersection.  According to Officer Savino, the Buick stopped approximately three-quarters of the length past the stop sign.  The Officer then initiated a traffic stop of the vehicle.

Officer Gingles approached the driver's side of the Buick, and Officer Savino approached the passenger side.  Officer Savino testified that he used his flashlight to look into the Buick and noticed what appeared to be marijuana leaves on the front passenger's shirt[1].  Officer Savino also stated that the back seat passenger, Timmons, kept reaching down towards his pants, after being warned several times to keep his hands up by Officer Gingles and Game Warden Byrd, who had just arrived on the scene.  Timmons and Kearny were both removed from the vehicle and placed in handcuffs and patted down for weapons.

Officer Savino testified that Officer Gingles asked the owner of the vehicle, Wright, if he had any contraband in the vehicle and then "do you have a problem with

---

[1] The record reflects that the front passenger's last name is "Kearney"; however, the record does not state his first name.

2

me checking the car?"[2]  Officer Savino stated that Wright consented to the search and then asked the officers if they wanted to also look in the trunk.

Officer Savino stated that he then searched the right front seat of the passenger side and found a hand-rolled marijuana cigar.  He placed Kearny under arrest.  Next, Officer Savino testified that he searched the backseat of the Buick and found a piece of paper with marijuana inside and a Torres (Taurus) fun, .410, .45 pistol under the seat in front of Timmons.  Timmons was then arrested.  Wright was subsequently arrested for not having a driver's license.  At the police station, a blue latex glove with three .410 shells were found in Timmons pocket during the booking process search.

On June 21, 2010, the trial court held a hearing on Timmons' motion to suppress. Timmons challenged the stop of the vehicle and the subsequent search of the vehicle. The court denied his motion.  On June 28, 2010, Timmons pleaded no contest to felony possession of a firearm by a felon.  On October 28, 2010, the trial court sentenced Timmons to confinement in the Institutional Division of the Texas Department of Criminal Justice for six years with one hundred and thirty-nine days credit for time served.  This appeal followed

## II.    STANDARD OF REVIEW

We review a trial courts ruling on a motion to suppress under a bifurcated standard of review: the trial courts findings of fact are given "almost total deference" when its ruling relies on the credibility of witnesses, *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000), while we apply a de novo standard of review to rulings that do not depend on credibility.  *Id.*; *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim.

---

[2]  The record reflects that the owner of the vehicle's name is "Wright"; however, the record does not state his first name.

3

App. 2000) ("A reasonable-suspicion determination is made by considering the totality of the circumstances, giving almost total deference to the trial court's determination of historical facts and reviewing de novo the trial court's application of the law to facts not turning on credibility and demeanor."). When the trial court does not enter findings of fact "a reviewing court must view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those finding are supported by the record. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

### III.   APPLICABLE LAW

The Fourth Amendment of the United States Constitution guarantees:

> the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The Fourth Amendment protects individuals from unreasonable seizures. *Wong Sun v. United States,* 371 U.S. 471, 484 (1963).

A person is seized by the police and therefore entitled to challenge the government's action under the Fourth Amendment of the constitution when the officer restrains the person's freedom of movement. *Florida v. Bostick*, 501 U.S. 429, 434 (1991).

> Any reasonable passenger would have understood the officers to be exercising control to the point that no one in the car was free to depart without police permission. A traffic stop necessarily curtails a passenger's travel just as much as it halts the driver, diverting both from the stream of traffic to the side of the road, and the police activity that normally amounts to intrusion on privacy

4

does not normally (and did not here) distinguish between passenger and driver.

*Brendlin*, 551 U.S. at 250. Therefore, when police initiate a traffic stop, a passenger in the car like the driver is seized under the Fourth Amendment and has standing to challenge the constitutionality of the stop. *Id.* at 249. This is true regardless of whether the passenger has a reasonable expectation of privacy. *Lewis*, 664 S.W2d at 348.

Temporary custody of a vehicle that the police have probable cause to believe has committed a traffic violation is consistent with the Fourth Amendment regardless of whether a reasonable officer would have been motivated to stop the automobile. *Whren v. United States*, 517 U.S.806, 810 (1996). "There is no requirement that a particular statute is violated in order to give rise to reasonable suspicion." *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.] 1997, no pet.). The State only needs to prove by testimony that the officer knew sufficient facts to reasonably believe that appellant violated traffic laws. *Whren*, 517 U.S. at 809-10.

A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention and it must be justified by reasonable suspicion. *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Hernandez v. State,* 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances. *Woods v. State,* 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). A detaining officer must have specific articulable facts that, taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.; Hernandez,* 983 S.W.2d at 869. It is the State's

5

burden to prove that a warrantless detention was lawful. *State v. Huddleston,* 164 S.W.3d 711, 716 (Tex. App.—Austin 2005, no pet.).

## IV.   STANDING

By his first issue, Timmons contends that, as a passenger of the vehicle that was stopped and searched by the police, he has standing to challenge both the vehicle stop and the resulting search by the police.[3]

When police officers signal that a driver should stop the vehicle, and in response the driver actually stops the vehicle, then the driver and all passengers inside the vehicle have been seized under the Fourth Amendment. *Arizona v. Johnson,* 555 U.S. 323 (2009); *Brendlin v. California,* 551 U.S. 249, 257 (2007). A passenger, therefore, has standing to challenge his seizure as unconstitutional regardless of whether he has an expectation of privacy. *Lewis v. State,* 664 S.W.2d 345, 34338 (Tex. Crim. App. 1984).

Officer Savino and Gingles turned on the flashing lights and signaled that the Buick should pull over, while Timmons was a passenger in the vehicle. *Brendlin,* 551 U.S. at 257. When the officers made the traffic stop of the vehicle, curtailing Timmons travel, the officers' activity was an intrusion on both the driver and Timmons. *Id.* Therefore, Timmons has standing to challenge the constitutionality of the traffic stop by police officers. *Id.* We sustain Timmons' first issue.

## V.   REASONABLE SUSPICION

---

[3] In accordance with the Texas Rules of Appellate Procedure 38.1(i), Timmons' argument challenging the search of the Buick will not be addressed because the brief did not contain a clear and concise argument with appropriate citations to authorities and the record. *See* Tex. R. App. P. 38.1 (i) (West 1999) (the appellant brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record).

6

In his second issue, Timmons contends that El Campo Police did not have reasonable suspicion to stop the vehicle because there was no clearly marked line at the intersection where the officers stopped the Buick.

In this case, the State argued that reasonable suspicion existed to stop Timmons because Officer Savino suspected a violation of section 544.010 of the transportation code. *See* TEX. TRANSP. CODE ANN. § 544.010 (West 1999). Section 544.010 provides that:

> (a) [u]nless directed to proceed by a police officer or traffic-control signal, the operator of a vehicle or streetcar approaching an intersection with a stop sign shall stop as provided by Subsection (c).
>
> (b) If safety requires, the operator of a vehicle approaching a yield sign shall stop as provided by Subsection (c).
>
> (c) An operator required to stop by this section shall stop before entering the crosswalk on the near side of the intersection. In the absence of a crosswalk, the operator shall stop at a clearly marked stop line. In the absence of a stop line, the operator shall stop at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway.

*Id.* "However, there is no requirement that an actual traffic offense be committed, just that the officer reasonably believed that a violation was in process." *Vasquez v. State*, 324 S.W.3d 912,919 (Tex. App.—Houston [14th Dist.] 2010, no pet.)

Officer Savino testified that they reasonably believed that a traffic violation had occurred, when they observed the Buick fail to stop at the stop sign. *See* TEX. TRANSP. CODE ANN. § 544.010 (West 1999). Officer Savino testified that he was very familiar with the intersection because he drove through it on daily basis. Next, he stated that he saw the Buick stop approximately three-quarters of the length of the car past the stop sign,

and that at this particular intersection it is a violation of the traffic laws to go past the stop sign to look into the intersection because there is a stop line. Officer Savino also said he believed that the Buick had violated the traffic laws. *Vasquez,* 324 S.W.3d at 919.

Officer Savino was shown pictures of the stop sign, which were admitted into evidence. Upon viewing the picture, Officer Savino stated, "The stop line is there. . . . and at nighttime it's reflective." Then when asked by Timmons' defense counsel "No, I'm asking you whether that's a clearly marked stop line," Officer Savino replied, "It's the remnants of a clearly marked stop line." Timmons appears to argue that Officer Savino's statement proves that there was not a clearly marked line. However, whether the line was clearly marked is a question of fact which the trial court resolved in the State's favor. *See Castro,* 227 S.W.3d at 741.

After hearing the testimony of Officer Savino about the traffic stop, the line, and viewing the pictures of the stop sign, the trial court could have decided to believe the officer's testimony that there was a clearly marked stop line. *See Kelly v.* State, 331 S.W.3d 541, 548 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The trial court as the resolver of facts could have determined that based on the totality of the circumstances the officers had reasonable suspicion to stop the Buick for violating section 544.010 of the transportation code. *See Whren,* 517 U.S. at 810. Therefore, viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the record supports the trial court's determination to deny the motion to suppress. *See Wiede,* 214 S.W.3d. at 28. We overrule Timmons' second issue.

## VI.     CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
14th day of July, 2011.

9