NUMBER 13-10-00638-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

                                  CORPUS CHRISTI -
EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JOSHUA SANTANA TIMMONS,                                                 Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                
Appellee.

 

 



On appeal from the 329th District
Court

of Wharton County, Texas.

 

 



 MEMORANDUM OPINION

 

Before Chief Justice Valdez and
Justices Rodriguez and Garza

Memorandum Opinion by
Chief Justice Valdez

Appellant, Joshua Santana Timmons, pleaded no contest to felony
possession of a firearm by a felon.  See Tex. Penal Code Ann. § 46.04 (West 1999).  The trial court sentenced Timmons to
confinement in the Institutional Division of the Texas Department of Criminal
Justice for six years with one hundred and thirty-nine days credit for time
served.  On appeal, Timmons challenges the trial court’s denial of his motion
to suppress.  We affirm.

I.             
Background

On March 12, 2010, El Campo Police Officers, Clint Savino and J.D.
Gingles, were stationed under an overpass monitoring a frontage road stop sign
when they stopped a white Buick at the 1400 block of Palacios Street El Campo,
Texas.  Officer Savino testified that the officers stopped the vehicle because
it failed to stop at the designated point at the stop sign intersection. 
According to Officer Savino, the Buick stopped approximately three-quarters of
the length past the stop sign.  The Officer then initiated a traffic stop of
the vehicle.

Officer Gingles approached the driver’s side of the Buick, and Officer
Savino approached the passenger side.  Officer Savino testified that he used
his flashlight to look into the Buick and noticed what appeared to be marijuana
leaves on the front passenger’s shirt[1]. 
Officer Savino also stated that the back seat passenger, Timmons, kept reaching
down towards his pants, after being warned several times to keep his hands up
by Officer Gingles and Game Warden Byrd, who had just arrived on the scene. 
Timmons and Kearny were both removed from the vehicle and placed in handcuffs
and patted down for weapons.  

Officer Savino testified that Officer Gingles asked the owner of the
vehicle, Wright, if he had any contraband in the vehicle and then “do you have
a problem with me checking the car?”[2] 
Officer Savino stated that Wright consented to the search and then asked the
officers if they wanted to also look in the trunk.  

            Officer
Savino stated that he then searched the right front seat of the passenger side
and found a hand-rolled marijuana cigar.  He placed Kearny under arrest.  Next,
Officer Savino testified that he searched the backseat of the Buick and found a
piece of paper with marijuana inside and a Torres (Taurus) fun, .410, .45
pistol under the seat in front of Timmons.  Timmons was then arrested.  Wright
was subsequently arrested for not having a driver’s license.  At the police
station, a blue latex glove with three .410 shells were found in Timmons pocket
during the booking process search.  

            On June
21, 2010, the trial court held a hearing on Timmons’ motion to suppress. 
Timmons challenged the stop of the vehicle and the subsequent search of the
vehicle.  The court denied his motion.  On June 28, 2010, Timmons pleaded no
contest to felony possession of a firearm by a felon.  On October 28, 2010, the
trial court sentenced Timmons to confinement in the Institutional Division of
the Texas Department of Criminal Justice for six years with one hundred and
thirty-nine days credit for time served.  This appeal followed

II.         Standard
of Review

We review a trial courts ruling on a motion to suppress under a
bifurcated standard of review: the trial courts findings of fact are given
“almost total deference” when its ruling relies on the credibility of witnesses,
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000), while we apply a de novo standard of review to rulings
that do not depend on credibility.  Id.; Castro v. State, 227 S.W.3d 737, 741 (Tex. Crim. App.
2000) (“A reasonable-suspicion
determination is made by considering the totality of the circumstances, giving
almost total deference to the trial court’s determination of historical facts
and reviewing de novo the trial court’s application of the law to facts not
turning on credibility and demeanor.”).  When
the trial court does not enter findings of fact “a reviewing court must view
the evidence in the light most favorable to the trial court’s ruling and assume
that the trial court made implicit findings of fact that support its ruling as
long as those finding are supported by the record.  Wiede v. State, 214
S.W.3d 17, 25 (Tex. Crim. App. 2007).  

III.        Applicable Law

The Fourth Amendment of the United States Constitution
guarantees: 

the
right of the people to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures, shall not be violated, and no
Warrants shall issue, but upon probable cause, supported by Oath or
affirmation, and particularly describing the place to be searched, and the
persons or things to be seized.  

 

U.S.
Const. amend. IV.  The Fourth Amendment
protects individuals from unreasonable seizures.  Wong
Sun v. United States,
371 U.S. 471, 484 (1963).  

A person is seized by the police and therefore entitled to challenge the
government’s action under the Fourth Amendment of the constitution when the
officer restrains the person’s freedom of movement.  Florida v. Bostick,
501 U.S. 429, 434 (1991).  

Any
reasonable passenger would have understood the officers to be exercising
control to the point that no one in the car was free to depart without police
permission.  A traffic stop necessarily curtails a passenger's travel just as
much as it halts the driver, diverting both from the stream of traffic to the
side of the road, and the police activity that normally amounts to intrusion on
privacy does not normally (and did not here) distinguish between passenger and
driver. 

 

Brendlin, 551 U.S. at 250.  Therefore, when police initiate a
traffic stop, a passenger in the car like the driver is seized under the Fourth
Amendment and has standing to challenge the constitutionality of the stop.  Id.
at 249.  This is true regardless of whether the passenger has a reasonable expectation
of privacy.  Lewis, 664 S.W2d at 348.

Temporary custody of a vehicle that the police have
probable cause to believe has committed a traffic violation is consistent with
the Fourth Amendment regardless of whether a reasonable officer would have been
motivated to stop the automobile.  Whren v. United States, 517 U.S.806,
810 (1996).  “There is no requirement that a particular statute is violated in
order to give rise to reasonable suspicion.”  Gajewski v. State, 944
S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.] 1997, no pet.).  The State only
needs to prove by testimony that the officer knew sufficient facts to
reasonably believe that appellant violated traffic laws.  Whren, 517
U.S. at 809-10. 

A warrantless automobile stop is a Fourth Amendment seizure analogous to
a temporary detention and it must be justified by reasonable suspicion.  Berkemer
v. McCarty, 468
U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); Hernandez
v. State, 983
S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref’d).  The reasonableness of a temporary detention must be
examined in terms of the totality of the circumstances. Woods
v. State, 956
S.W.2d 33, 38 (Tex. Crim. App. 1997).
 A detaining officer must have specific articulable facts that, taken together
with rational inferences from those facts, lead him to conclude that the person
detained is, has been, or soon will be engaged in criminal activity.  Id.; Hernandez, 983 S.W.2d at 869.  It is the State’s burden to prove that a warrantless
detention was lawful.  State
v. Huddleston, 164
S.W.3d 711, 716 (Tex. App.—Austin 2005, no pet.). 

IV.       Standing

            By his
first issue, Timmons contends that, as a passenger of the vehicle that was
stopped and searched by the police, he has standing to challenge both the
vehicle stop and the resulting search by the police.[3]  

When police officers signal that a driver should stop the vehicle, and in
response the driver actually stops the vehicle, then the driver and all
passengers inside the vehicle have been seized under the Fourth Amendment.  Arizona
v. Johnson, 555
U.S. 323 (2009); Brendlin
v. California, 551
U.S. 249, 257 (2007).  A passenger,
therefore, has standing to challenge his seizure as unconstitutional regardless
of whether he has an expectation of privacy.  Lewis v. State, 664 S.W.2d
345, 34338 (Tex. Crim. App. 1984). 

            Officer
Savino and Gingles turned on the flashing lights and signaled that the Buick
should pull over, while Timmons was a passenger in the vehicle.  Brendlin,
551 U.S. at 257.  When the officers made the traffic stop of the vehicle,
curtailing Timmons travel, the officers’ activity was an intrusion on both the
driver and Timmons.  Id.  Therefore, Timmons has standing to challenge
the constitutionality of the traffic stop by police officers.  Id.  We
sustain Timmons’ first issue.  

V.        Reasonable
Suspicion

In his second issue, Timmons contends that El Campo Police did not have
reasonable suspicion to stop the vehicle because there was no clearly marked
line at the intersection where the officers stopped the Buick.

In this case, the State argued that reasonable suspicion existed to stop
Timmons because Officer Savino suspected a violation of section  544.010 of the
transportation code.  See Tex.
Transp. Code Ann. § 544.010 (West 1999).  Section 544.010 provides that:

(a) [u]nless directed to proceed by a police officer or traffic-control
signal, the operator of a vehicle or streetcar approaching an intersection with
a stop sign shall stop as provided by Subsection (c).

 

(b) If safety requires, the operator of a vehicle
approaching a yield sign shall stop as provided by Subsection (c).

 

(c) An operator required to stop by this section shall
stop before entering the crosswalk on the near side of the intersection. In the
absence of a crosswalk, the operator shall stop at a clearly marked stop line.
In the absence of a stop line, the operator shall stop at the place nearest the
intersecting roadway where the operator has a view of approaching traffic on
the intersecting roadway.

 

Id.  “However, there is no requirement that
an actual traffic offense be committed, just that the officer reasonably
believed that a violation was in process.” 
Vasquez v. State, 324 S.W.3d 912,919 (Tex. App.—Houston [14th Dist.]
2010, no pet.)

Officer Savino testified that they reasonably believed that
a traffic violation had occurred, when they observed the Buick fail to stop at
the stop sign.  See Tex. Transp. Code Ann. §
544.010 (West 1999).  Officer Savino
testified that he was very familiar with the intersection because he drove
through it on daily basis.  Next, he stated that he saw the Buick stop
approximately three-quarters of the length of the car past the stop sign, and
that at this particular intersection it is a violation of the traffic laws to
go past the stop sign to look into the intersection because there is a stop
line.  Officer Savino also said he believed that the Buick had violated the
traffic laws.  Vasquez, 324 S.W.3d at 919. 

Officer Savino was shown pictures of the stop sign, which were admitted
into evidence.  Upon viewing the picture, Officer Savino stated, “The stop line
is there. . . .  and at nighttime it’s reflective.” 
Then when asked by Timmons’ defense counsel “No, I’m asking you whether that’s
a clearly marked stop line,” Officer Savino replied, “It’s the remnants of a
clearly marked stop line.”  Timmons appears to argue that Officer Savino’s
statement proves that there was not a clearly marked line.  However, whether
the line was clearly marked is a question of fact which the trial court
resolved in the State’s favor.  See Castro,
227 S.W.3d at 741.

After hearing the testimony of Officer Savino about the
traffic stop, the line, and viewing the pictures of the stop sign, the trial court
could have decided to believe the officer’s testimony that there was a clearly
marked stop line.  See Kelly v. State, 331 S.W.3d 541, 548 (Tex.
App.—Houston [14th Dist.] 2011, no pet.).  The trial court as the resolver of
facts could have determined that based on the totality of the circumstances the
officers had reasonable suspicion to stop the Buick for violating section 544.010
of the transportation code.  See Whren, 517 U.S. at 810.  Therefore,
viewing the evidence in the light most favorable to the trial court's ruling,
we conclude that the record supports the trial court's determination to deny
the motion to suppress.  See Wiede, 214 S.W.3d. at 28.  We overrule
Timmons’ second issue.

 

VI.       Conclusion

            The judgment of the trial court is affirmed.  

_____________________

Rogelio Valdez

                                                                                                Chief
Justice

 

Do not
Publish. 

Tex. R. App. P. 47.2(b)

Delivered and filed the


14th day of July, 2011.

 

 

 

 

 









[1] The record reflects that the front
passenger’s last name is “Kearney”; however, the record does not state his
first name.





[2]  The record reflects that the owner
of the vehicle’s name is “Wright”; however, the record does not state his first
name.





[3] In accordance with the Texas Rules of
Appellate Procedure 38.1(i), Timmons’ argument challenging the search of the
Buick will not be addressed because the brief did not contain a clear and
concise argument with appropriate citations to authorities and the record.  See
Tex. R. App. P. 38.1 (i) (West 1999) (the appellant brief must contain a
clear and concise argument for the contentions made, with appropriate citations
to authorities and to the record).