NO. 07-12-0100-CR

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL B

 FEBRUARY 27, 2013

 TOMAS MENDOZA-TORRES,

 Appellant
 v.

 THE STATE OF TEXAS,

 Appellee
 _____________________________

 FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

 NO. 2011-432,947; HONORABLE JOHN J. "TREY" MCCLENDON, PRESIDING

 Memorandum Opinion

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
 Appellant Tomas Mendoza-Torres was convicted of possession of a
controlled substance greater than four grams but less than 200 grams with
intent to deliver. In seeking to reverse that conviction, he contends the
trial court erred in 1) overruling his motion to suppress, and 2) admitting
into evidence two photographs of a Scarface poster. We affirm the
conviction.
 On February 24, 2011, police executed an arrest warrant on appellant
at a residence in Lubbock. They knocked on the door, which was answered by
appellant's common-law wife Amada Griselda Gonzalez, and entered the
residence. Appellant was located in a bedroom, allowed to finish dressing,
and handcuffed and taken to the Department of Public Safety (DPS). Police
then obtained both oral and written consent from Gonzales to search the
residence. While doing so, they located cocaine, a handgun, and a large
amount of cash. A ledger was also taken from a vehicle parked outside.
 Issue 1 - Motion to Suppress
 In his first issue, appellant argues that Gonzalez did not
voluntarily give consent to search the residence because 1) she was under
duress, and 2) law enforcement officers intentionally removed appellant
from the house so he could not refuse consent. We overrule the issue.
 The trial court's ruling on a motion to suppress is reviewed under
the standard discussed in St. George v. State, 237 S.W.3d 720, 725 (Tex.
Crim. App. 2007) and Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). Next, when determining whether consent to search was voluntary, we
look to the totality of the circumstances from the standpoint of an
objectively reasonable person. Meekins v. State, 340 S.W.3d 454, 459 (Tex.
Crim. App. 2011). Factors to be considered include 1) whether the person
was advised of his constitutional rights, 2) the length of the detention,
3) whether questioning was repetitive or prolonged, 4) whether the person
knew he could decline to answer questions, and 5) what kind of
psychological impact the questions had on the person. Tucker v. State, 369
S.W.3d 179, 185 (Tex. Crim. App. 2012). Finally, the State is required to
prove the voluntariness of the consent by clear and convincing evidence.
State v. Weaver, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011).
 Appearing of record is evidence that law enforcement officers entered
the home around 7:00 a.m. to 7:05 a.m. At 7:15 a.m., Gonzalez signed a
written consent to search in which she acknowledged that she understood she
had the right to refuse to consent and that no "promises, threats, force,
or physical or mental coercion of any kind whatsoever" had been used
against her. Officers also testified that 1) prior to signing the
document, she also orally consented to the search, 2) an officer reviewed
the written form with her in both Spanish and English, 3) she was "very
cooperative," "calm," and "passive," 4) her demeanor did not change
throughout the time they were in her home, 5) they did not believe their
guns were drawn when they entered the house, and 6) she was not threatened
in any manner, including with the removal of her children.[1]
 Conversely, appellant testified that one of his children answered the
door, and the officers entered the house screaming with rifles in their
hands. He also testified that Gonzalez was "very nervous" and has a
"sickness of nervousness" which causes her to not be able to "speak well."
Appellant further stated that he was allowed to talk to Gonzalez after he
had been taken to the DPS building. At that time, she was nervous and
crying, according to appellant.
 On issues of witness credibility, we defer to the trial court's
determination. Wiede v. State, 214 S.W.3d 17, 24-25 (Tex. Crim. App.
2007). The trial court could have believed the testimony of the officers
over that of appellant and, given the written consent form signed by
Gonzalez in which she denied being threatened or coerced and acknowledged
that she had a right to refuse to give consent, we cannot find an abuse of
discretion on the part of the trial court. See Kelly v. State, 331 S.W.3d
541, 547 (Tex. App.-Houston [14th Dist.] 2011, pet. ref'd) (stating that an
officer's testimony that consent was voluntarily given can be sufficient
evidence to prove voluntariness).
 Appellant also testified that he would not have given oral consent to
search the house once he had been handcuffed. Yet, a co-tenant who lives
at a residence may give consent to search so long as that tenant has
control over and authority to use the premises. Georgia v. Randolph, 547
U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). Nonetheless, when
another co-tenant is present and expressly objects to the search, the
latter is not necessarily reasonable as to him. Id. at 120, 126 S.Ct. at
1527. Given that, appellant asserts that he was expressly removed from the
home so that he could not object to the search. See id. at 121, 126 S.Ct.
at 1527 (stating there must be no evidence that the police removed the
potentially objecting tenant from the residence for the sake of avoiding a
possible objection). Our review of the record uncovered no evidence
supporting the contention.
 Appellant had been arrested and handcuffed under a valid warrant. At
that point, there was no reason for him to remain at the residence, and it
was logical that he would be transported to law enforcement offices or to
jail. Nor did he cite us to any evidence of record suggesting that at the
time of his arrest, he uttered words or engaged in conduct evincing any
objection to the officers searching his home. Indeed, at the suppression
hearing he was asked whether or not he would have consented to such had he
been asked and his reply was that it depended upon when and how the request
was made. That hardly suggests that the officers knew he would not consent
and, therefore, ushered him outside and away from any conversation between
his wife and the officers. In short, appellant's complaint is founded upon
mere speculation, and the trial court was free to reject it. See Young v.
State, No. 07-08-0309-CR, 2009 Tex. App. Lexis 7126, at *12 (Tex. App.-
Amarillo September 4, 2009, pet. ref'd) (not designated for publication)
(holding that testimony that officers failed to ask the defendant for
consent to search after he had been removed from the house and placed in a
patrol car prior to seeking his mother's consent is not evidence of an
intent to avoid a possible objection).
 Issue 2 - Admission of Poster
 In his second issue, appellant complains of the admission into
evidence of two photographs of a poster. The poster depicted "Scarface," a
movie starring Al Pacino, and was found in the same closet where drugs were
found. He contends the probative value of the poster is outweighed by its
prejudice under Rule 403 of the Rules of Evidence.[2]
 We review the trial court's ruling for abuse of discretion. McCarty
v. State, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). The following four
factors are often reviewed to determine if evidence should be excluded
under that rule. They are 1) the probative value of the evidence, 2) the
potential for the evidence to impress the jury in some irrational yet
indelible way, 3) the time needed to develop the evidence, and 4) the
proponent's need for the evidence. State v. Mechler, 153 S.W.3d 435, 440
(Tex. Crim. App. 2005).
 Appellant relies upon Conerly v. State, No. 14-07-00542-CR, 2008 Tex.
App. Lexis 5517 (Tex. App.-Houston [14th Dist.] July 24, 2008), pet. ref'd)
(not designated for publication) in which the court upheld the trial
court's exclusion of a photograph of a similar poster even though the
defendant sought to have it admitted to prove his defensive theory. In that
case, the trial court excluded the photographs found in the victim's home
because they had little if any probative value as to whether the defendant
committed that particular offense, they would suggest that a person hanging
a movie poster in their house automatically identified with the lifestyle
of the film, and there was a substantial amount of other evidence showing
that the victim and his brother identified with a life of guns and
violence. Id. at *1. The Court of Appeals found that the evidence only
"incrementally" furthered the defendant's defense, could impress the jury
in an irrational way, and the need for the evidence was minimal. Id. at
*14-16. Those are not the circumstances here.
 According to the State, the poster served to illustrate appellant's
mens rea or the element of intent to deliver. Indeed, one officer
testified that the movie "Scarface" was about drug trafficking and that
drug dealers tended to identify with it and its subject matter. Another
testified that such posters were present at 99 percent of the locations he
investigated for drugs. Should the trial court couple that information
with the discovery in appellant's home of a large sum of money, a firearm,
a quantum of drugs suggesting more than mere personal use, and a ledger, it
had basis to perceive the posters as relevant to appellant's intent, that
is, his desire to also be a drug dealer like "Scarface."[3] Additionally,
the time spent on developing the evidence was minimal. Given this, trial
court's decision that the probative value of the posters was not
substantially outweighed by their potential prejudice fell within the zone
of reasonable disagreement and did not constitute an instance of abused
discretion.
 Having overruled all issues, we affirm the judgment.

 Brian Quinn
 Chief Justice
Do not publish.

-----------------------
 [1]One officer did testify that he told appellant in his interview at
the DPS office that if he did not cooperate with police, they would assume
that anything found at his home belonged to the adults living there, which
would also result in the arrest of Gonzalez, and Child Protective Services
would be called to take care of the children.

 [2]The rule provides that relevant evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative
evidence. Tex R. Evid. 403.

 [3]What tends to be ignored is that neither the movie nor its
protagonist met with a happy end.