NO. 07-12-0100-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 27, 2013

_____

TOMAS MENDOZA-TORRES,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2011-432,947; HONORABLE JOHN J. "TREY" MCCLENDON, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Tomas Mendoza-Torres was convicted of possession of a controlled substance greater than four grams but less than 200 grams with intent to deliver. In seeking to reverse that conviction, he contends the trial court erred in 1) overruling his motion to suppress, and 2) admitting into evidence two photographs of a Scarface poster. We affirm the conviction.

On February 24, 2011, police executed an arrest warrant on appellant at a residence in Lubbock. They knocked on the door, which was answered by appellant's

common-law wife Amada Griselda Gonzalez, and entered the residence. Appellant was located in a bedroom, allowed to finish dressing, and handcuffed and taken to the Department of Public Safety (DPS). Police then obtained both oral and written consent from Gonzales to search the residence. While doing so, they located cocaine, a handgun, and a large amount of cash. A ledger was also taken from a vehicle parked outside.

*Issue 1 – Motion to Suppress*

In his first issue, appellant argues that Gonzalez did not voluntarily give consent to search the residence because 1) she was under duress, and 2) law enforcement officers intentionally removed appellant from the house so he could not refuse consent. We overrule the issue.

The trial court's ruling on a motion to suppress is reviewed under the standard discussed in *St. George v. State,* 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) and *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Next, when determining whether consent to search was voluntary, we look to the totality of the circumstances from the standpoint of an objectively reasonable person. *Meekins v. State,* 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). Factors to be considered include 1) whether the person was advised of his constitutional rights, 2) the length of the detention, 3) whether questioning was repetitive or prolonged, 4) whether the person knew he could decline to answer questions, and 5) what kind of psychological impact the questions had on the person. *Tucker v. State,* 369 S.W.3d 179, 185 (Tex. Crim. App. 2012). Finally, the State is required to prove the voluntariness of the consent by clear and convincing evidence. *State v. Weaver,* 349 S.W.3d 521, 526 (Tex. Crim. App. 2011).

Appearing of record is evidence that law enforcement officers entered the home around 7:00 a.m. to 7:05 a.m. At 7:15 a.m., Gonzalez signed a written consent to search in which she acknowledged that she understood she had the right to refuse to consent and that no "promises, threats, force, or physical or mental coercion of any kind whatsoever" had been used against her. Officers also testified that 1) prior to signing the document, she also orally consented to the search, 2) an officer reviewed the written form with her in both Spanish and English, 3) she was "very cooperative," "calm," and "passive," 4) her demeanor did not change throughout the time they were in her home, 5) they did not believe their guns were drawn when they entered the house, and 6) she was not threatened in any manner, including with the removal of her children.[1]

Conversely, appellant testified that one of his children answered the door, and the officers entered the house screaming with rifles in their hands. He also testified that Gonzalez was "very nervous" and has a "sickness of nervousness" which causes her to not be able to "speak well." Appellant further stated that he was allowed to talk to Gonzalez after he had been taken to the DPS building. At that time, she was nervous and crying, according to appellant.

On issues of witness credibility, we defer to the trial court's determination. *Wiede v. State,* 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). The trial court could have believed the testimony of the officers over that of appellant and, given the written consent form signed by Gonzalez in which she denied being threatened or coerced and

---

[1]One officer did testify that he told appellant in his interview at the DPS office that if he did not cooperate with police, they would assume that anything found at his home belonged to the adults living there, which would also result in the arrest of Gonzalez, and Child Protective Services would be called to take care of the children.

acknowledged that she had a right to refuse to give consent, we cannot find an abuse of discretion on the part of the trial court. *See Kelly v. State,* 331 S.W.3d 541, 547 (Tex. App.–Houston [14th Dist.] 2011, pet. ref'd) (stating that an officer's testimony that consent was voluntarily given can be sufficient evidence to prove voluntariness).

Appellant also testified that he would not have given oral consent to search the house once he had been handcuffed. Yet, a co-tenant who lives at a residence may give consent to search so long as that tenant has control over and authority to use the premises. *Georgia v. Randolph,* 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). Nonetheless, when another co-tenant is present and expressly objects to the search, the latter is not necessarily reasonable as to him. *Id.* at 120, 126 S.Ct. at 1527. Given that, appellant asserts that he was expressly removed from the home so that he could not object to the search. *See id.* at 121, 126 S.Ct. at 1527 (stating there must be no evidence that the police removed the potentially objecting tenant from the residence for the sake of avoiding a possible objection). Our review of the record uncovered no evidence supporting the contention.

Appellant had been arrested and handcuffed under a valid warrant. At that point, there was no reason for him to remain at the residence, and it was logical that he would be transported to law enforcement offices or to jail. Nor did he cite us to any evidence of record suggesting that at the time of his arrest, he uttered words or engaged in conduct evincing any objection to the officers searching his home. Indeed, at the suppression hearing he was asked whether or not he would have consented to such had he been asked and his reply was that it depended upon when and how the request was made. That hardly suggests that the officers knew he would not consent and,

4

therefore, ushered him outside and away from any conversation between his wife and the officers. In short, appellant's complaint is founded upon mere speculation, and the trial court was free to reject it. *See Young v. State,* No. 07-08-0309-CR, 2009 Tex. App. LEXIS 7126, at *12 (Tex. App.–Amarillo September 4, 2009, pet. ref'd) (not designated for publication) (holding that testimony that officers failed to ask the defendant for consent to search after he had been removed from the house and placed in a patrol car prior to seeking his mother's consent is not evidence of an intent to avoid a possible objection).

*Issue 2 – Admission of Poster*

In his second issue, appellant complains of the admission into evidence of two photographs of a poster. The poster depicted "Scarface," a movie starring Al Pacino, and was found in the same closet where drugs were found. He contends the probative value of the poster is outweighed by its prejudice under Rule 403 of the Rules of Evidence.[2]

We review the trial court's ruling for abuse of discretion. *McCarty v. State,* 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). The following four factors are often reviewed to determine if evidence should be excluded under that rule. They are 1) the probative value of the evidence, 2) the potential for the evidence to impress the jury in some irrational yet indelible way, 3) the time needed to develop the evidence, and 4) the proponent's need for the evidence. *State v. Mechler,* 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).

---

[2]The rule provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX R. EVID. 403.

Appellant relies upon *Conerly v. State,* No. 14-07-00542-CR, 2008 Tex. App. LEXIS 5517 (Tex. App.–Houston [14th Dist.] July 24, 2008), pet. ref'd) (not designated for publication) in which the court upheld the trial court's exclusion of a photograph of a similar poster even though the defendant sought to have it admitted to prove his defensive theory. In that case, the trial court excluded the photographs found in the *victim's* home because they had little if any probative value as to whether the defendant committed that particular offense, they would suggest that a person hanging a movie poster in their house automatically identified with the lifestyle of the film, and there was a substantial amount of other evidence showing that the victim and his brother identified with a life of guns and violence. *Id.* at *1. The Court of Appeals found that the evidence only "incrementally" furthered the defendant's defense, could impress the jury in an irrational way, and the need for the evidence was minimal. *Id.* at *14-16. Those are not the circumstances here.

According to the State, the poster served to illustrate appellant's mens rea or the element of intent to deliver. Indeed, one officer testified that the movie "Scarface" was about drug trafficking and that drug dealers tended to identify with it and its subject matter. Another testified that such posters were present at 99 percent of the locations he investigated for drugs. Should the trial court couple that information with the discovery in appellant's home of a large sum of money, a firearm, a quantum of drugs suggesting more than mere personal use, and a ledger, it had basis to perceive the posters as relevant to appellant's intent, that is, his desire to also be a drug dealer like "Scarface."[3] Additionally, the time spent on developing the evidence was minimal.

---

[3]What tends to be ignored is that neither the movie nor its protagonist met with a happy end.

6

Given this, trial court's decision that the probative value of the posters was not substantially outweighed by their potential prejudice fell within the zone of reasonable disagreement and did not constitute an instance of abused discretion.

Having overruled all issues, we affirm the judgment.


Brian Quinn
Chief Justice

Do not publish.