William LeBLANC, Appellant

v.

The STATE of Texas, Appellee.

No. 14–03–00119–CR.

Court of Appeals of Texas, Houston (14th Dist.).

June 22, 2004.

---

604

Jon Christopher Fultz, Navasota, for appellants.

Andria Mosley Bender, Asst. District Atty., Anderson, for appellees.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

LESLIE BROCK YATES, Justice.

Following the trial court's denial of his pre-trial motion to suppress evidence, appellant William LeBlanc pleaded guilty to the offense of possession with intent to deliver more than four but less than 200 grams of methamphetamine. The trial court assessed punishment at eight years' confinement in the Texas Department of Criminal Justice, Institutional Division. In two points of error, appellant claims the trial court erred in denying his motion to suppress. We affirm.

On the evening of October 11, 2001, Ryan Schroeder and Todd Helms, deputy sheriffs with the Grimes County Sheriff's Department, stopped a truck on Highway 6 in Grimes County for defective taillights and for not having a license plate or license plate lights. The vehicle had three occupants. Appellant was the driver of the vehicle. Tracy Hayes and Sonya Amason were the passengers. Based on appellant's extreme level of nervousness, his failure to make eye contact while speaking with the deputies, his failure to present proof of insurance, his inconsistent explanation when questioned about the purpose of his trip, and his implausible route, in addition to the fact that his passengers had no form of identification, Deputy Helms asked for consent to search the vehicle. Appellant initially consented to a partial search of the truck, but later withdrew his consent. Deputy Helms retrieved his narcotics dog from the patrol car and had the dog perform an open-air sniff of appellant's vehicle. After the dog alerted on appellant's truck, appellant told the deputies he had a marijuana cigarette in the vehicle. Deputy Helms searched the interior of the vehicle and found a small portion of a marijuana cigarette and several driver's licenses with appellant's picture on them, but with different names and dates of birth. In the bed of the truck, Helms found three round balls and hypodermic needles. The three round balls tested positive for methamphetamine.

In this appeal, appellant challenges whether the deputies had probable cause or reasonable suspicion to continue to detain appellant after the original purpose of the traffic stop had expired. Once the investigation of the conduct that initiated the traffic stop was concluded, continued detention of appellant was permitted only if there was reasonable suspicion to do so. *Woods v. State,* 956 S.W.2d 33, 35, 38 (Tex.Crim.App.1997). To demonstrate reasonable suspicion, the State had to present to the trial court specific articulable facts, which, when combined with rational inferences from those facts, led Deputies Helms and Schroeder to reasonably suspect in light of their experience and knowledge that appellant had engaged, was engaging, or was soon to engage in criminal activity. *Id.* This standard is an objective one. *Garcia v. State,* 827 S.W.2d 937, 943–44 (Tex.Crim.App.1992). There need only be an objective basis for the detention-the subjective intent of the deputies conducting the detention is irrelevant.

*Id.* The reasonable suspicion determination is made by considering the totality of the circumstances. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App.2001).

■■ In making this totality-of-the-circumstances determination, we use a bifurcated standard of review. We give almost total deference to the trial court's determination of historical facts supported by the record and the application of law to fact questions that turn on credibility and demeanor; however, we review de novo application of law to fact questions that do not turn upon credibility and demeanor. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Accordingly, we view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling, and sustain the ruling if it is sufficiently supported by the evidence and is correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996).

In his first point of error, appellant claims the trial court erred in denying his motion to suppress because the State failed to show the officers had probable cause to detain him after the conclusion of the initial traffic stop.[1] Appellant acknowledges the Court of Criminal Appeals determined in *Davis v. State* that the State need only show reasonable suspicion to support a detention. *See* 947 S.W.2d 240, 242 (Tex.Crim.App.1997) (adopting the standard established by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Nonetheless, appellant asks this court to reconsider the Court of Criminal Appeals'

holding in *Davis* because the standard it adopted was "misplaced." We decline to reconsider the *Davis* opinion. *See Rodriguez v. State*, 47 S.W.3d 86, 94–95 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd) (stating that as an intermediate appellate court, we are bound to follow the law as declared by the state's highest courts and noting that, because the Court of Criminal Appeals is the highest court on matters of criminal law, when it has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation). Accordingly, we overrule appellant's first point of error.

In his second point of error, appellant contends the trial court erred in denying his motion to suppress because the State failed to show reasonable suspicion existed to continue to detain appellant beyond the effectuation of the purpose of the initial traffic stop. We disagree.

At the hearing on the motion to suppress, the State introduced the testimony of Deputy Schroeder and Deputy Helms. After the stop, appellant stepped out of his vehicle, leaned and reached back into his vehicle, and then stepped toward the back of the vehicle. Deputy Helms said these acts concerned him. Helms placed his hand on his service weapon, and appellant was asked to step to the back of the vehicle and show the officers his hands. Deputy Schroeder asked for appellant's driver's license and proof of insurance. Appellant quickly said that he would go ahead and receive a citation for no insurance. Appellant provided an older-style license, which had been discontinued in Texas. Appellant's driver's license was checked for outstanding warrants. Both deputies testified

---

1. Appellant does not appear to contest the warrantless search based on the alert by the canine. *See United States v. Zucco*, 71 F.3d 188, 191–92 (5th Cir.1995) (holding that once a canine alerts to a vehicle, there is probable cause to search it). Rather, appellant argues the deputies had no right to detain him after the citation was issued in order to retrieve the canine and perform the open-air sniff of his truck.

that appellant was noticeably shaking and sweating. Schroeder indicated that appellant seemed in a hurry, and the level of nervousness being exhibited was beyond the typical amount of nervousness exhibited by a person stopped for a traffic violation.

Deputy Helms spoke with appellant and asked him where he was headed to and where he was coming from that night. Appellant began sweating more and said he was in the process of moving from Houston to Fort Worth.[2] Given appellant's location, Helms thought that the route was unusual and that appellant might be providing a false destination. Helms also noticed that appellant's driver's license had a Fort Worth address and the bed of the pickup truck was only half full, inconsistent with appellant's story. Further, some items in the back of the truck were covered with a tarp. Helms observed that appellant was very fidgety—he untucked his shirt and began pulling on its hem and avoided eye contact with the deputies. Appellant was pacing and unable to stay in one spot.

Deputy Helms also spoke with the passengers. One of the passengers appeared to be asleep, and "awoke" only when prompted for identification. The passengers did not have any form of identification, but provided their names and dates of birth so the officers could check them for warrants. Helms thought it was odd for an adult to sleep through a traffic stop. Further, no driver's license was found under the two names provided by the passengers. Helms said it is common knowledge in law enforcement that such a return often means an individual is giving a false name or date of birth. Deputy Helms noticed the floorboard of the vehicle contained numerous fast-food wrappers. Helms said that he was taught in his drug interdiction training that fast-food wrappers can be an indicator of possible narcotics trafficking because traffickers stop only long enough to pick up fast food and continue on their way.

Deputy Schroeder then gave appellant a citation. While Schroeder was completing the citation, Deputy Helms asked appellant if he had any illegal weapons or narcotics. Helms named different narcotics. Appellant remained silent when asked about certain drugs, but when asked about methamphetamines, appellant became upset and loudly said, "No." At this point, appellant was asked for consent to search the vehicle. After appellant ultimately refused to consent, Deputy Helms decided to have his narcotics dog sniff around the exterior of the vehicle.[3]

 Appellant argues that, because the facts listed above are weak indicators of criminal behavior, the deputies did not have sufficient reasonable suspicion that appellant was engaging or was soon to engage in criminal activity.[4] However, of-

---

2. Appellant points out that Deputy Helms's testimony differs from Deputy Schroeder's with regard to appellant's destination.

3. Appellant attacks the credibility of the witnesses by noting inconsistencies in the accounts given by the deputies concerning the precise time of the stop, which side of the vehicle Schroeder approached at the beginning of the stop, who ran the NCIC and TCIC checks on the passengers, whether Helms advised Schroeder that he believed there may be narcotics in the vehicle prior to the dog alert-

ing on the vehicle, and whether Helms spoke with appellant or the passengers first. However, as noted above, we must afford almost total deference to the trial court's determination of the historical facts that are supported by the record, especially when the trial court's findings are based on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89.

4. Appellant primarily relies on *Davis v. State* and *McQuarters v. State*, 58 S.W.3d 250 (Tex. App.-Fort Worth 2001, no pet.). The cases

ficers are entitled to rely on all of the information obtained during the course of their contact with a suspect in developing articulable facts that would justify a continued investigatory detention. *Razo v. State*, 577 S.W.2d 709, 711 (Tex.Crim.App. [Panel Op.] 1979). The deputies said that (1) appellant exhibited furtive movements upon exiting his vehicle;[5] (2) appellant quickly said he would take a ticket for no insurance; (3) appellant presented an older style driver's license, which had been discontinued by Texas; (4) the floorboard of appellant's vehicle contained numerous fast-food wrappers; (5) appellant had a tarp covering some items in the back of the truck; (6) appellant was shaking, sweating, and exhibiting an extreme level of nervousness, including the avoidance of eye contact with the deputies;[6] (7) appellant's story was inconsistent with his actions or information discovered during the traffic stop, such as the Fort Worth address and the half-empty truck; and (8) neither one of appellant's passengers had any form of identification and the information provided by them indicated that neither had a driver's license. It is not important that any of these facts when viewed alone may appear purely innocent or may not rise to the level of reasonable suspicion. *See Telshow v. State*, 964 S.W.2d 303, 306 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (stating that "there may be instances when a person's conduct, viewed in a vacuum, appears purely innocent, yet when viewed in the light of the totality of the circumstances, those actions give rise to reasonable suspicion"). Additionally, we note that, although reasonable suspicion must be based on articulable facts rather than an unparticularized hunch, the level of suspicion required for a detention "is obviously less demanding than that for probable cause," and probable cause only requires " 'a fair probability that contraband or evidence of a crime will be found.' " *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)) ("The Fourth Amendment requires 'some minimal level of objective justification' [for a detention] considerably less than proof of wrongdoing by a preponderance of the evidence.") (quoting *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)).

Based on our review of the totality of the circumstances, in light of the officers'

---

are distinguishable. In *Davis*, the officer told the defendant that he was free to leave the scene, but that his vehicle was being detained. 947 S.W.2d at 241. The court found the instruction seriously undercut a finding of reasonable suspicion. *Davis*, 947 S.W.2d at 241 ("Indeed, when viewed in an objective fashion, no known fact, or rational inferences from those facts, would support the conclusion that appellant was engaged in or soon would engage in criminal activity. The officers obviously made the same determination because they informed appellant that he was free to leave.") (citations omitted). Similarly in *McQuarters*, the officer suspected the defendant of being possibly intoxicated or falling asleep at the wheel, questioned him, quickly concluded that he was not intoxicated, and informed the defendant that he was going to write him a warning and then let him go. 58 S.W.3d at 253–54. The court distinguished the facts of its case by noting that the "detentions in [the cases cited by the State] were reasonable because the officer [in each case] was in the midst of conducting the investigation for the initial traffic stop" when he developed reasonable suspicion. *Id.* at 257.

5. Furtive movement during a police stop has been found to be a factor giving rise to reasonable suspicion. *Valencia v. State*, 820 S.W.2d 397, 400 (Tex.App.-Houston [14th Dist.] 1991, pet ref'd).

6. Although nervousness alone is not sufficient, it has been found to be a factor giving rise to reasonable suspicion. *Simpson v. State*, 29 S.W.3d 324, 329 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

experience and knowledge, we find Deputies Schroeder and Helms had sufficient reasonable suspicion to justify the short detention of appellant from the time the citation was issued until Deputy Helms retrieved his canine from the patrol car at the scene. *See Smith v. State*, 945 S.W.2d 343, 346 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd) (officers must diligently pursue a means of investigation that minimizes the time and scope of the intrusion on the individual). We overrule appellant's second point of error.

Having overruled all of appellant's points of error, we affirm the trial court's judgment.