PD-1032&1033-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/14/2015 3:04:54 PM
Accepted 9/16/2015 12:19:10 PM
ABEL ACOSTA
CLERK

NO. PD-1032-15 & PD-1033-15

## TO THE COURT OF CRIMINAL APPEALS OF TEXAS

LARRY RICHARD, *APPELLANT*

VS.

THE STATE OF TEXAS, *APPELLEE*

---

## PETITION FOR DISCRETIONARY REVIEW

---

On Petition For Discretionary Review from the First Court of Appeals;

Cause Nos. 01-14-00072 -CR & 01-14-00073-CR

affirming the trial court's denial of a Motion to Suppress in Cause Nos. 1233998 &

1401120 from the 185th District Court of Harris County, Texas.

Honorable Susan Brown, Judge Presiding

---

**DEBORAH SUMMERS**
11210 Steeplecrest, Ste. 120
Houston, Texas 77065
State Bar No. 19505600
(281) 897-9600
summerspc@sbcglobal.net

**Counsel for Appellant**

FILED IN
COURT OF CRIMINAL APPEALS

September 16, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a), the following are parties or counsel to the judgment appealed from:

Presiding Judge:     The Honorable Susan Brown
            185th Criminal District Court
            1201 Franklin
            Houston, Texas 77002

Appellant:       Larry Richard
            SPN # 02257892
            1200 Baker
            Houston, Texas 77002

Attorneys for State:    Mr. David Abrams (at hearing)
            District Attorney's Office
            1201 Franklin
            Houston, Texas 77002

            Mr. Alan Curry(on appeal)
            District Attorney's Office
            1201 Franklin
            Houston, Texas 77002

Attorney for Appellant:   Ms. Deborah Summers (hearing and appeal)
            11210 Steeplecrest, Ste. 120
            Houston, Texas 77065

**TABLE OF CONTENTS**

|  | PAGE |
|---|---|
| IDENTITY OF PARTIES | i |
| TABLE OF CONTENTS | ii |
| INDEX OF AUTHORITIES | iii |
| STATEMENT OF THE CASE | vii |
| STATEMENT REGARDING REFERENCES TO THE RECORD | ix |
| STATEMENT OF PROCEDURAL HISTORY | 1 |
| **GROUNDS FOR REVIEW** | 1 |
| **THE COURT OF APPEALS USED THE WRONG STANDARD IN DETERMINING LEGALITY OF *TERRY* FRISK AND;** | **3** |
| **BECAUSE THE COURT OF APPEALS ERRED IN HOLDING THAT THE *TERRY* FRISK WAS VALID, THEY THEN ERRED IN HOLDING THAT THE OFFICER WAS IN A POSITION TO 'PLAIN VIEW' THE CONTRABAND.** | **9** |
| ARGUMENT | 2 |
| A. Factual Background | 2 |
| B. Court of appeals used wrong standard in determing legality of Terry frisk. | 3 |
| C. Court of appeals erred in holding officer was in a legal position to view contraband | 9 |
| PRAYER FOR RELIEF | 17 |
| CERTIFICATE OF SERVICE | 17 |
| CERTIFICATE OF COMPLIANCE | 18 |

# INDEX OF AUTHORITIES

CASES              PAGE

*Amitage v. State*, 637 S.W.2d 936
(Tex.Crim.App.  1982)          2 n. 2

*Carmouche v. State*, 10 S.W.3 323
(Tex.Crim.App.  2000)          4, 5,7,8

*Cromwell v. State,* No. 14-99-00282, 2000 Tex. App.
LEXIS 8129, WL 1786344, (Houston [14th] Dec.7, 2000 no pet.)
(not designated for publication)          5, 8

*Davis v. State*, 829 S.W.2d 218
(Tex. Crim. App. 1992)          8

*Davis v. State*, 947 S.W.2d 240
(Tex. Crim. App. 1997)          5

*Garcia v. State*, 827 S.W.2d 937
(Tex.Crim.App.  1992)          2 n. 2

*Garcia v. State*, 43 S.W.3d 527
(Tex. Crim. App. 2001)          7

*Gray v. State*, 158 S.W.3d 465
(Tex. Crim. App. 2005)          7

*Keehn v. State*, 279 S.W.3d 330
(Tex. Crim. App. 2009)          9

*Kelly v. State*, 331 S.W.3d 541
(Tex. App. - Houston [14th Dist.] 2011, pet. ref'd)          5

CASES                                                          PAGE

*LeBlanc v. State*, 138 S.W.3d 603
(Tex. App. - Houston [14th Dist.] 2004, no pet. )              5

*Martinez v. State*, 17 S.W.3d 677
(Tex.Crim.App. 2000)                                          9

*McVickers v. State*, 874 S.W.2d 662
(Tex. Crim. App.  1993)                                       2 n.2

*Michigan v. Lane* 463 U.S. 1032, 1050 (1983)                 9

*Ramos  v. State*, 934 S.W.2d 358
(Tex.Crim.App.  1996)                                         9

*Richard v. State,* No. 01-14-00072 & 73-CR, LEXIS 7218
(Houston [1st Dist.] July 14, 2015, no pet. h)
(not designated for publication)                              *passim*

*Smallwood v. State,* No. 04-11-00749-CR, LEXIS 10835 WL 4678653
(San Antonio, Aug. 28, 2013, no pet.)
(not designated for publication)                              4, 7

*Terry v. Ohio*, 392 U.S. 1, 25-26 (1968)                     *passim*

*Thomas v. State*, 297 S.W.3d 458
(Houston [14th Dist.] 2009, pet. ref'd)                       4, 7

*Worthy v. State*, 805  S.W.2d 435
(Tex.Crim.App., 1991)                                         5, 6


CONSTITUTIONS                                                 PAGE

U.S. Const. amend. IV                                         4, 9, 10

Tex. Const. art. I, § 9                                       4, 9, 10

STATUTES                                                                                    PAGE

Tex. Penal Code Ann. § 22.02
(Vernon Supp. 2010)                                                                          vi

Tex. Crim. Pro. Code Ann. § 38.23
(Vernon Supp. 2013)                                                                          4, 9

Tex. Crim. Pro. Code Ann. § 42.12
(Vernon Supp. 2010)                                                                          vi

Tex. Health & Safety Code Ann. §§ 481.103, 481.116(d)
(Vernon Supp. 2013)                                                                          viii


RULES                                                                                        PAGE

TEX. R. APP. Proc. 9.4(i)(1)                                                                  13

TEX. R. APP. 38.1(a)                                                                         i

TEX. R. APP. Proc. 66.3                                                                       1

**STATEMENT OF THE CASES**


**Cause Number 1233998 - Motion to Adjudicate**

The Appellant was placed on deferred adjudication community supervision on April 5, 2010 for the offense of Aggravated Assault (CR1 at 420). Tex. Penal Code Ann. § 22.02(a),(b)(1) (Vernon Supp. 2010); Tex. Crim. Pro. Code Ann. § 42.12 (Vernon Supp. 2010) .

In December of 2012, a motion to adjudicate was filed alleging various technical violations (CR1 at 434-435). The motion to adjudicate was dismissed and the Appellant's conditions were amended giving him jail time as a condition of his community supervision (CR1 at 436).

In September of 2013, a second motion to adjudicate was filed alleging a new law violation and the technical violations from the December 2012 motion to adjudicate were re-alleged (CR1 at 438-439). In November of 2013, the motion to adjudicate was amended to allege METHYLONE instead of METHAMPHETAMINE (CR1 at 442-443).

A  motion to suppress the evidence, was filed December 6, 2013 (CR1 at 445-446). This evidence was the basis of  the new law violation and generated the motion to adjudicate even though there were technical violations (RR3 at 40; RR4 at 42).

A hearing was held combining the motion to adjudicate and the motion to

suppress beginning on December 6, 2013 (RR3 at 4-6). At the conclusion of the hearing, the trial court denied the motion to suppress, found the allegations true and sentenced the Appellant to 7 years TDCJ (RR4 at 41-42).

**Cause number 1401120 - PCS with Intent to Deliver**

The Appellant was charged by indictment with Possession of a Controlled Substance, namely, Methylone with the intent to deliver (CR2 at 10). Tex. Health & Safety Code Ann. §§ 481.103, 481.116(d) (Vernon Supp. 2013). A motion to suppress the evidence was filed on December 6, 2013 (CR2 at 12-15). A hearing on the motion to suppress was held and combined with the motion to adjudicate the community supervision (RR3 at 4-6). At the conclusion of the hearing, the trial court denied the motion to suppress (CR2 at 14; RR4 at 41).

Thereafter the Appellant entered a plea bargain for 7 years TDCJ and preserved the right to appeal (CR2 at 23-24, 30).

Appellant filed a timely, written Notice of Appeal on December 13, 2013 (CR1 at 458; CR2 at 36). Appellant requested that the trial court prepare written findings of fact and conclusions of law. The trial court prepared the requested findings and filed the findings on October 3, 2014 (Supp. CR).

**STATEMENT REGARDING REFERENCES TO THE RECORD**

The clerk's record in 1233998 case will be cited as "CR1". The clerk's record in case number 1401120 will be cited as "CR2" and the supplemental record as "Supp. CR". The reporter's record for the trial consists of four volumes and will cited as "RR1, RR2, or RR3, etc..." Exhibits will be cited as "State Exhibit 1" "Defense Exhibit 1" etc....

**STATEMENT OF PROCEDURAL HISTORY**

The First Court of Appeals affirmed the trial court's denial of the motion to suppress in an unpublished opinion. *Richard v. State*, 01-14-00072-CR, 01-14-00073-CR, 2015 Lexis 7218 (Tex. App.-Houston [1st Dist.] July 14, 2015, no pet. h.)(mem. op. not designated for publication).

**GROUNDS FOR REVIEW**

The court of appeals used the wrong standard when holding that the officer's subjective reason to conduct a *Terry* frisk was not relevant to the legality of the *Terry* search. *Terry v. Ohio*, 392 U.S. 1 (1968). And, because the court of appeals used the wrong standard in holding that the second *Terry* frisk was a legal search, the officer was not in a position to 'plain view' the contraband.

Review is proper because the First Court of Appeals appears to have misconstrued the right of an officer to conduct a *Terry* frisk. This departure from the accepted and usual state of the law calls for an exercise of the Court of Criminal Appeals' power of judicial supervision. Tex. R. App. Proc. 66.3.

1

# ARGUMENT

## A. Factual Background

Officer Sandoval[1] testified that he was running stationary radar when he saw a vehicle driving 50 miles per hour in a posted 35 mile an hour zone (RR3 at 14). He initiated a traffic stop (RR3 at 15)[2]. Sandoval identified the Appellant as the driver of the vehicle and testified that there were two passengers (RR3 at 16). He testified that as he approached the vehicle he noticed the Appellant making furtive movements towards his leg area and ordered everyone out of the car for 'officer's safety' (RR3 at 16). He then frisked the three individuals looking for weapons and did not find any weapons or contraband (RR3 16-17, 28-29).

After a second officer arrived[3], Sandoval searched the Appellant's vehicle and then began a second search of the Appellant and his passengers (RR3 at 28-29). As Sandoval began his second search of the Appellant, he noticed a plastic baggie

---

[1]With the Jacinto City Police Department, hereafter Sandoval.

[2]An officer may lawfully stop a motorist who commits a traffic violation. *See McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993); *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). The officer may detain a person who commits a traffic violation. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). The Appellant is not contesting the initial reason for the stop.

[3]This is when the dashcam video begins (RR3 at 28, State's exhibit 1).

2

hanging out of the Appellant's shoe only but only when he approached the Appellant to ask him to remove his shoes  (RR3 at 17; State's Exhibit 1). Sandoval testified (when being questioned about his conduct on the video) that when he was checking one of the passengers shoes - that it is his protocol because, "A lot of times they do hide narcotics inside their shoes or sock area" (RR3 at 23; State's Exhibit 1).

Under cross examination, Sandoval admitted that he was not that concerned with his safety with the three occupants of the vehicle (RR3 at 26-27).   He further admitted that prior to the second officer arriving with the dash cam, he had turned his back to the three occupants of the vehicle and did not think it necessary to secure them while he searched the vehicle (RR3 at 26-27). He further admitted that when he began the second search he was looking for drugs (RR3 at 28-29).  Sandoval agreed that during the first search of the Appellant, he did not observe the plastic baggie (RR3 at 32).

Sandoval testified that, although he had known of drug trafficking in the apartment complex, he was not thinking that the Appellant, or his passengers,  were involved (RR3 at 29-30).

**B. Court of Appeals used wrong standard in determining legality of *Terry* frisk.**

Court of Appeals used the wrong standard when holding that the officer's subjective reason to conduct a *Terry* frisk was not relevant to the legality of the *Terry*

3

search.  *Terry v. Ohio*, 392 U.S. 1 (1968). Although the court of appeals correctly stated the law, the court of appeals failed to apply the correct standard, under *Terry*, for the unjustified second search which was facially intrusive  (RR3 at 27-30).   *Richard v. State*, Nos. 01-14-00072 & 73-CR, 2015 Tex. App. LEXIS 7218 *13-14, (Houston [1st Dist.] July 14, 2015)(not designated for publication).

*Terry*  and its progeny have carefully distinguished between the legal standard justifying the initial stop with the legal authority to do the search.  *Terry v. Ohio*, 392 U.S. 1 (1968); U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Crim. Pro. Code Ann. § 38.23 (Vernon Supp. 2013). This the court of appeals does not do.

Even in the absence of probable cause, an officer may conduct a limited search of the Appellant's outer clothing to locate weapons if the officer has a *reasonable belief*[4] that the Appellant is armed and dangerous, either to himself or others. *Smallwood v. State*, No. 04-11-00749-CR, 2013 Tex. App. LEXIS 10835, WL 4678653 (San Antonio, Aug. 28, 2013)(not designated for publication) citing *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000); *Thomas v. State*, 297 S.W.3d 458, 462 (Houston [14th Dist.] 2009, pet. ref'd).

To support a protective frisk,  facts known to the officer  must cause a reasonably cautious person to believe that the person frisked was presently armed and

---

[4]All emphasis is the author's unless otherwise indicated.

dangerous. *Terry,* 392 U.S. at 27 ; *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997); *Carmouche v. State*, 10 S.W.3d at 329.

Sandoval did not disclose, until cross examination, that there were two searches of the Appellant and the other two occupants of the vehicle (RR3 at 16-17, 28). He testified that he conducted a search before the second officer arrived for 'officer's safety' and a second search for narcotics after he had completed searching the Appellant's vehicle (RR3 at 28).

However, the "exigencies" which permit the additional search are *generated strictly by a concern for the safety* of the officers. *Cromwell v. State,* No. 14-99-00282, 2000 Tex. App. LEXIS 8129, WL 1786344, (Houston [14th] Dec.7, 2000 no pet.)(not designated for publication) citing *Terry v. Ohio*, 392 U.S. 1, 25-26 (1968) ("The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.").

The intrusion that accompanies a *Terry* search is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that his safety is in danger. *See Worthey v. State*, 805 S.W.2d 435, 438 (Tex. Crim. App.1991). The court of appeals incorrectly held that the Appellant's 'furtive movements' towards his leg area support Sandoval's reasonable concern for his

5

safety. *Richard* at *15. The court of appeals cites *Kelly v. State* and *LeBlanc*, as supportive of Sandoval's right to continue the detention but neither case is on point as to the officer's right to search for weapons. *Richard* at *15 citing *Kelly v. State*, 331 S.W.3d 541, 549-50, (Tex. App. - Houston [14th Dist.] 2011, pet. ref'd); *LeBlanc v. State*, 138 S.W.3d 603, 608 & n. 5 (Tex. App. - Houston [14th Dist.] 2004, no pet. ). Both *Kelly* and *LeBlanc* discuss that 'furtive movement' coupled with nervousness can provide reasonable suspicion to continue and investigatory detention. *Id.* The court of appeals has ignored the requirement that the officer point to specific and articulable facts which give rise to the officer's belief that the Appellant was armed and dangerous justifying the initial and subsequent search. *Ricard* at *14 citing *Terry* and *Worthey v. State*, 805 S.W.2d at 438. Not only was the Appellant not nervous, but he and the other two occupants had a cordial conversation with the second officer while Sandoval searched the Appellants vehicle (State Exhibit # 1). Further, Sandoval describes the Appellant's demeanor as calm (RR3 at 20).

Although Sandoval agreed that he was not so concerned with his safety that he felt he needed to handcuffed the Appellant and his passengers while he conducted the search of the vehicle (RR 3 at 26-27). He agreed he was not *that worried* about his safety with these three young men (RR3 at 27). He admitted that he had turned his back on the three men during the time he was with them and before the second officer arrived (RR3 at 26-27). Sandoval was not justified in his initial search of the

6

Appellant and his occupants. The court of appeals ignored this portion of the testimony and further ignored case law that an officer is only permitted to conduct a limited search of a suspect's *outer* clothing[5] to locate weapons based on a reasonable belief that the suspect is armed and dangerous to the officer or others in the area. *Smallwood v. State*, No. 04-11-00749-CR, 2013 Tex. App. LEXIS 10835, WL 4678653 (San Antonio, Aug. 28, 2013)(not designated for publication) citing *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000); *Thomas v. State*, 297 S.W.3d 458, 462 (Houston [14th Dist.] 2009, pet. ref'd).

The court of appeals cited to *Garcia* and *Gray* as support that an officer's subjective reason for the search is not relevant to the analysis at bar. *Garcia v. State*, 43 S.W.3d 527 (Tex. Crim. App. 2001); *Gray v. State*, 158 S.W.3d 465, 469-70 (Tex. Crim. App. 2005). The court stated that though Sandoval was looking for narcotics, that his subjective intent was irrelevant to their analysis. But both the cases cited go to the subjective intent to detain, not to conduct the a *Terry* frisk. Neither *Garcia* or *Gray* support the court of appeals ruling. *Id.* And the court does not provide any case law that obviates a need for 'specific and articulable facts' to support a *Terry* frisk of outer clothing much less a requirement that the Appellant remove his shoes. *Terry; Carmouche v. State*, 10 S.W.3d at 329; *Thomas v. State*, 297 S.W.3d at 462.

---

[5]Sandoval did not conduct a search of the outer clothing of the Appellant and his passengers during the second search (RR3 at 27-28; State's exhibit 1).

7

When the officer had the Appellant and the other occupants of the vehicle remove their shoes, the officer exceeded the parameters of a *Terry* frisk. The court of appeals erred in holding that this was based on a 'reasonable suspicion' that the Appellant was 'armed and dangerous'. *Carmouche v. State*, 10 S.W.3d at 329. Sandoval testified that it was *'always'* his protocol[6] to search the socks and shoes because'a lot of times they hide narcotics inside their shoes' (RR3 at 23). When the officer realized that he had deviated from his 'searching for weapons' statement, he volunteered the search of the shoes was because the Appellant, 'might have pocketknife down there" (RR3 at 29). As this Court held in *Davis*, it would be unreasonable for two armed officers to fear a pocket knife that *might be* in the Appellant's shoe (RR3 at 29). *Davis v. State*, 829 S.W2d 218, 220-21 (Tex. Crim. App.1992) (unreasonable for two armed officers, even facing three black males, to fear a razor blade that might be in a matchbox) . The court of appeals ruling is in conflict with *Davis* and should be reversed. *Richard* at *20. See also, *Cromwell v. State,* No. 14-99-00282, 2000 Tex. App. LEXIS 8129, WL 1786344, (Houston [14th] Dec. 7, 2000, no pet.)(not designated for publication)[7] .

---

[6]Appellant submits that Sandoval was going to search his shoes with or without a reasonable suspicion to do so.

[7]Although Sandoval *did not* mention a concern for his safety because he was out numbered, the lone officer in *Cromwell* did mention that there were four people in the vehicle that he stopped. *Cromwell v. State*, LEXIS 8129, WL 1786344 at 8-9. Nevertheless, the Court of Appeals held that being outnumbered was not sufficient to justify a self protective search. *Id*.

**C. Court of Appeals erred in holding Sandoval was in a legal position to view contraband.**

The plain view doctrine requires a two-prong showing: (1) that law enforcement officials see an item in plain view at a *vantage point where they have the right to be*, and (2) it is immediately apparent that the item seized constitutes evidence -- that is, there is probable cause to associate the item with criminal activity. *Ramos v. State*, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996) *cited in Martinez v. State*, 17 S.W.3d 677, 685 (Tex. Crim. App. 2000) U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Crim. Pro. Code Ann. § 38.23 (Vernon Supp. 2014) .

It is with the first prong, that the Appellant argues the court of appeals erred. As argued above, Sandoval had no right to require the Appellant to remove his shoes for a *Terry* frisk. Sandoval had positioned himself behind the Appellant and was using his foot to spread the legs of the Appellant (RR3 at 34). If Sandoval had no right to position himself behind the Appellant, forcing him to spread his legs, then his viewing of the plastic baggie was unconstitutional. The court of appeals cites to *Michigan v. Lane* and *Keehn* for the proposition that the officer must lawfully be where the object can be plainly viewed. *Richard* at 21 citing *Michigan v. Lane* 463 U.S. 1032, 1050 (1983) (if an officer is lawfully where an object can be plainly viewed, the officer

9

may lawfully access the object); *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). The Appellant agrees with *Michigan* and *Keehn*. *Id.* Because the court of appeals erred in holding that Sandoval had the right to search the Appellant's shoes for weapons, the court of appeals subsequent finding that the officer was in a position to 'plainly view' the contraband, is also error and should be reversed. *Richard* at 21-22; U. S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Crim. Pro. Code Ann. § 38.23 (Vernon Supp. 2014).

.

**CONCLUSION AND PRAYER FOR RELIEF**

FOR THE FOREGOING REASONS, the Appellant respectfully requests that this Court grant review and, after a full briefing on the merits, issue an opinion reversing the court of appeals decision and exercise this Court's power of supervision when a court has so departed from *stare decisis*.

RESPECTFULLY SUBMITTED,

/S/ *Deborah Summers*

Deborah Summers
State Bar No. 19505600
11210 Steeplecrest
Suite 120
Houston, Texas 77065
(281) 897-9600
summerspc@sbcglobal.net

ATTORNEY FOR APPELLANT

11

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument has been furnished to the Harris County District Attorney by electronic delivery the 14 day of September, 2015.

Further, I hereby certify that a true and correct copy of the above and foregoing instrument has been delivered to the State Prosecuting Attorney, by efiling same to information@spa.texas.gov on this the  14th   day of September,  2015.


 /S/  _Deborah Summers_

Deborah Summers

12

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(I), the undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. Proc. 9.4(e)(I).

1.     Exclusive of the portions exempted by Tex. R. App. Proc. 9.4(i)(1), this brief contains <u>2660</u> words printed in a proportionally spaced typeface.

2.     This brief is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and 12 point font in footnotes produced by Corel Word software.

3.     Upon request undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4.     Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Tex. R. App. Proc. 9.4(j), may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/S/ *Deborah Summers*
Deborah Summers



In The

# Court of Appeals

For The

# First District of Texas

---

NO. 01-14-00072-CR
NO. 01-14-00073-CR

---

**LARRY WAYNE RICHARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

On Appeal from the 185th District Court
Harris County, Texas
Trial Court Case Nos. 1233998 and 1401120

---

## MEMORANDUM OPINION

Appellant, Larry Wayne Richard, with an agreed punishment recommendation from the State, pleaded guilty to the offense of possession with intent to deliver a controlled substance, namely, methylone, weighing more than

four grams and less than two hundred grams.[1] In accordance with the plea agreement, the trial court assessed his punishment at confinement for seven years. The State also moved to adjudicate appellant's guilt for the offense of aggravated assault of a family member,[2] for which appellant had been previously placed on community supervision. The trial court granted the State's motion to adjudicate and assessed appellant's punishment at confinement for seven years, with the sentence to run concurrently with that for the offense of possession with intent to deliver a controlled substance. In his sole issue, appellant contends that the trial court erred in denying his motion to suppress evidence, which he made in both cases.

We affirm.

## Background

In April 2010, appellant, without an agreed punishment recommendation from the State, pleaded guilty to the offense of aggravated assault of a family member. The trial court deferred adjudication of appellant's guilt and placed him on community supervision for six years.

In October 2013, a Harris County grand jury issued a true bill of indictment, accusing appellant of the offense of possession with intent to deliver a controlled

---

[1] See TEX. HEALTH & SAFETY CODE ANN. §§ 481.103, 481.113 (Vernon Supp. 2014); appellate cause no. 01-14-00073-CR; trial court cause no. 1401120.

[2] See TEX. PENAL CODE ANN. § 22.02(b) (Vernon 2011); appellate cause no. 01-14-00072-CR; trial court cause no. 1233998.

2

substance, namely, methylone, weighing more than four grams but less than two hundred grams. The State then filed a motion to adjudicate appellant's guilt in his aggravated assault case, alleging that he had violated a term of his community supervision, namely, that he "[c]ommit no offense against the laws of this or any other State or of the United States." The State further alleged that appellant had violated the terms of his community supervision by failing to submit to random urine specimen analysis and pay certain assessed fees. Appellant then filed a motion to suppress evidence in both cases.

At the hearing on appellant's motion to suppress evidence and the State's motion to adjudicate guilt, Jacinto City Police Department ("JCPD") Officer T. Sandoval testified that on September 12, 2013, while he was on duty in his patrol car "running stationary radar," he saw appellant driving a brown Buick at fifty miles per hour in a thirty-five-mile-per-hour zone. Sandoval activated his emergency lights and siren, and he followed appellant into the parking lot of an apartment complex, where appellant stopped. As Sandoval approached appellant, he saw appellant making "furtive movements towards his leg area." After he directed appellant and his two passengers to exit the car "for officer safety," he conducted a protective frisk of each of them and searched the car "for weapons." As Sandoval was "frisking [appellant], searching him for weapons," he saw a "little clear plastic baggie," "like, a sandwich bag," "hanging out of his shoe."

3

Sandoval explained that, based on his experience, it is "typical" for people to place "drugs . . . inside a clear plastic bag to keep it dry." Sandoval then asked appellant to remove his shoes, and, after appellant complied, Sandoval saw that the clear plastic bag contained a "powdery substance." Appellant then "kind of moved back," and Sandoval had to restrain him. Sandoval conducted a field test of the substance in the bag, which tested positive for methamphetamine.

The trial court admitted into evidence a dash-camera videotape from the patrol car of a back-up officer who later arrived on the scene. The videotape shows that upon the back-up officer's arrival, Officer Sandoval began searching appellant's car through the door on the driver's side, and he continued his search for approximately twenty seconds. Sandoval next went over to one of appellant's passengers, lifted the passenger's pant leg out of his tennis shoe, viewed the area around his ankles, and directed him to remove his shoes. Sandoval then went to appellant, who was wearing long shorts that covered his legs and high-top tennis shoes, and who was standing with his hands on the trunk of his car. Sandoval placed a hand on appellant's back and used his foot to separate appellant's feet. When appellant attempted to back up, Sandoval restrained him against the trunk of the car.

On cross-examination, Officer Sandoval testified, in pertinent part, as follows:

4

| | |
|---|---|
| [Defense counsel]: | So, after you searched the vehicle and you don't find any weapons or any drugs, then you come out of the car and you approach the three occupants, correct? |
| [Sandoval]: | Yes, ma'am. |
| [Defense counsel]: | And you're searching for—you're frisking them for weapons at that point in time for officers' safety, right? |
| [Sandoval]: | Yes, ma'am, yes, ma'am. |
| [Defense counsel]: | So, you start searching them at their ankles, correct? |
| [Sandoval]: | Yes, ma'am. |
| [Defense counsel]: | Okay. Now, you never at any point on the video pat down the other two occupants at their waist or their pockets, correct? |
| [Sandoval]: | I did before the other officer showed up . . . . |

. . . .

| | |
|---|---|
| [Sandoval]: | So, the second time that you're patting them down it's not for officers' safety. You're looking for drugs, correct? |
| [Sandoval]: | At that time—I guess you could say that, yes, ma'am, I was. |
| [Defense counsel]: | Okay. Well, is that what happened? Is that what you were doing? Because you started at their ankles, correct? |

. . . .

| | |
|---|---|
| [Sandoval]: | Okay. Yes. |

5

| | |
|---|---|
| [Defense counsel]: | So you're looking for drugs at that point in time? |
| [Sandoval]: | Possibly. He could have a pocketknife down there. You just never know. If they might have a weapon down there, you just never know. |

. . . .

> Well, you usually find drugs, sometimes you do find drugs down there while you're searching for weapons.

On re-direct, Sandoval testified, in pertinent part, as follows:

| | |
|---|---|
| [State]: | Was your main concern weapons? |
| [Sandoval]: | Yes. |

. . . .

| | |
|---|---|
| [State]: | Okay. I want to make sure we understand this, Officer. At this point you have already patted down these guys for weapons? |
| [Sandoval]: | Yes, sir. |
| [State]: | Right? Just a general pat-down? |
| [Sandoval]: | Just a general pat-down. |
| [State]: | Okay. At this point you didn't see anything? |
| [Sandoval]: | No, sir, I didn't. |

. . . .

6

[State]: Okay. Now, you started searching the vehicle while your partner, the second officer, was at the scene, right?

[State]: Yes, sir.

. . . .

[State]: Okay. Okay. So, at this point you've searched them once; you went up to this other guy who wasn't arrested, right?

[Sandoval]: Yes, sir.

[State]: And you asked to see what's on his ankles?

[Sandoval]: Yes, sir.

[State]: Okay. This would be the second search defense counsel's talking about?

[Sandoval]: Yes. . . .

. . . .

[State]: Okay. Now, right here at this point, you put your hand on the defendant and you moved your foot near his foot?

[Sandoval]: Yes, I did.

[State]: Were you patting him down right here at this point?

[Sandoval]: Yes. At that point, no, I was not. I had my hand on him and I was spreading his legs, yes.

[State]: Okay. At this point, is this where you saw the plastic bag hanging out of his shoe?

7

| | |
|---|---|
| [Sandoval]: | Yes. |
| [State]: | At that point you hadn't actually patted him down a second time? |
| [Sandoval]: | No, I have not. |
| [State]: | Okay. Now, when you saw that plastic bag hanging out of his shoe, what did you think that was? |
| [State]: | Possibly narcotics. |

Finally, on re-cross, Sandoval explained that he waited for the backup officer to arrive before patting down appellant lower on his legs because he was alone and "you never want to search down low while you're by yourself."

R. Theodore, a chemist at the Harris County Institute of Forensic Sciences, testified that the bag that Officer Sandoval seized from appellant contained 11.947 grams of methylone. And J. Fuentes, a Harris County community supervision officer, testified that appellant had violated the terms of his community supervision by failing to submit to drug testing on July 6, 2010 and pay certain assessed fees.

The trial court denied appellant's motion to suppress, explaining:

> . . . [I]n reviewing the testimony from [Officer Sandoval], the Court is going to deny the motion to suppress based on the fact that the officer —based on the officer observing, as he was—the defendant speeding, the driver of the vehicle that was speeding, 50 in a 35-mile-an-hour zone and that he observed the driver, as he was attempting to pull the car over, making furtive movements towards—particularly, I wrote down in my notes, toward his leg area, and that based on that, after stopping the car and being a one-man unit, got the three occupants out, that at the time—I just don't think the search of the car is an issue

8

at all because obviously no drugs were found and it really didn't lead to anything. But I do find that once he observed the plastic bag and based on his testimony that he knew that drugs could be held in plastic bags and that he had seen the defendant reaching towards the area of his ankle, that he had probable cause to believe that that plastic bag had some sort of contraband in it. Based on that, the Court is going to deny the motion to suppress.

It then adjudicated appellant's guilt of the offense of aggravated assault of a family member, noting:

> And based on . . . that, the Court then finds the allegation of the defendant possessed a controlled substance, on September 12th of 2013, weighing more than 4 grams and less than 200 grams by aggregate weight, including any adulterants and dilutants, to be true.

> Realistically I agree with the defense that we dealt with the other two issues previously as far as the failing to leave a UA and we've been dealing with the fee issues for quite some time, along with the other issues in the original—and I don't mean the original motion that was filed at this time but the previous motion to file.

> And based on finding those true, . . . [t]he Court having heard the evidence presented in the motion to adjudicate and finding the allegation you possessed a controlled substance, 4 to 200 grams methylone, to be true, the Court finds you guilty . . . .

After the trial court denied appellant's motion to suppress evidence and adjudicated his guilt for the offense of aggravated assault of a family member, appellant then pleaded guilty to the offense of possession with intent to deliver a controlled substance. The trial court subsequently made and filed findings of fact and conclusions of law.

9

## Standard of Review

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). "We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of law to the facts de novo." *Id.* We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When, as here, the trial court makes findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review the trial court's legal ruling de novo unless its explicit findings that are supported by the record are also dispositive of the legal ruling. *Id.* We

will sustain the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ross*, 32 S.W.3d at 855–56.

## Motion to Suppress Evidence

In his sole issue, appellant argues that the trial court erred in denying his motion to suppress the methylone seized from his shoe because, under the United States and Texas Constitutions, the officer did not have "reasonable suspicion to search [him] a second time" and "was not in a position to trigger the 'plain view' exception to a search without a warrant." *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *see also Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877 (1968); *Texas v. Brown*, 460 U.S. 730, 741–42, 103 S. Ct. 1535, 1543 (1983).[3]

"A 'stop' and 'frisk' by law enforcement personnel amounts to a sufficient intrusion on an individual's privacy to implicate the Fourth Amendment's protections." *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (citing *Terry*, 392 U.S. at 16, 88 S. Ct. at 1877). Under an exception to the Fourth Amendment's warrant requirement, however, an officer may generally be justified in briefly detaining an individual on less than probable cause for the purpose of investigating "possibly[]criminal behavior." *Id.* (citing *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) ("Texas

---

[3]    Because appellant does not provide argument or authority that the Texas Constitution is more comprehensive than its federal counterpart, we will limit our analysis to the Fourth Amendment's protections. *See Carmouche v. State*, 10 S.W.3d 323, 326 (Tex. Crim. App. 2000).

courts require reasonable suspicion before a seizure of the person or property can occur.")).

To determine the reasonableness of an investigative detention, we consider whether the officer's action was (1) justified at its inception and (2) reasonably related in scope to the circumstances that justified the interference. *Terry*, 392 U.S. at 19–20, 88 S. Ct. at 1879; *Davis*, 947 S.W.2d at 242. Under the first prong, an officer is generally justified in briefly detaining an individual on less than probable cause for the purpose of investigating "possibly [] criminal behavior," where the officer has "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *Carmouche*, 10 S.W.3d at 328. Reasonable suspicion must be based on more than a non-specific suspicion or mere "hunch" of criminal activity. *Terry*, 392 U.S. at 22, 88 S. Ct. at 1880. The officer must have had an objective basis for the stop; the officer's subjective intent is irrelevant. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). We look only to the facts known to the officer at the inception of the stop; an initially unlawful stop is not validated by a subsequent discovery of criminal activity. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 415 (1963).

Under the second prong, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Davis*, 947

12

S.W.2d at 245. The reasonableness of the detention depends on whether law enforcement officers diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly. *Id.* For instance, in a routine traffic stop, a police officer may order the driver and occupants out of the car without violating the Fourth Amendment. *O'Hara v. State*, 27 S.W.3d 548, 553 (Tex. Crim. App. 2000); *Champenois v. State*, 874 S.W.2d 254, 257 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109–111, 98 S. Ct. 330, 332, 333 (1977)). And an officer may request identification and insurance information from the detainee and conduct a computer verification. *Kothe v. State*, 152 S.W.3d 54, 63–64 (Tex. Crim. App. 2004); *see Davis*, 947 S.W.2d at 245 n.6. The investigation is not complete until such check is completed and the officer confirms that the person has no outstanding warrants. *Kothe*, 152 S.W.3d at 63–64. Once the purpose of the initial stop has been effectuated, however, "the stop may not be used as a 'fishing expedition for unrelated criminal activity.'" *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S. Ct. 417, 422 (1996) (Ginsberg, J., concurring)).

Further, a law enforcement officer who has lawfully detained a person for investigation may conduct a protective search of the detainee's outer clothing for weapons, even in the absence of probable cause, if the officer reasonably believes that the suspect is armed and dangerous. *See Terry*, 392 U.S. at 27, 88 S. Ct. at

13

1883; *Davis*, 829 S.W.2d at 220. However, "'[t]he purpose of a limited search after [an] investigatory stop is not to discover evidence of a crime, but to allow the peace officer to pursue investigation without fear of violence.'" *Carmouche*, 10 S.W.3d at 329 (quoting *Wood v. State*, 515 S.W.2d 300, 306 (Tex. Crim. App. 1974)). A pat-down search is not justified on the basis that an officer has a "reasonable suspicion to believe that [a detainee is] involved in criminal activity." *Id.* (distinguishing legal standard justifying initial detention from legal authority to conduct "frisk"). "[T]he 'exigencies' [that] permit the additional search are generated strictly by a concern for the safety of the officers." *Id.* (citing *Terry*, 392 U.S. at 25–26, 88 S. Ct. at 1882). And the "additional intrusion that accompanies a *Terry* frisk is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon." *Id.* (citing *Terry*, 392 U.S. at 26–27, 88 S. Ct. at 1882–83; *Worthey v. State*, 805 S.W.2d 435, 438 (Tex. Crim. App. 1991)).

Officer Sandoval testified that he initially detained appellant because he saw him exceeding the posted speed limit. *See* TEX. TRANSP. CODE ANN. § 545.351 (Vernon 2011).[4] Sandoval, at that point, was afforded enough time to effectuate the purpose of the stop. *See Davis*, 947 S.W.2d at 245. As Sandoval approached

---

[4] A peace officer may arrest without a warrant a person found committing a traffic violation, with exceptions including speeding. TEX. TRANSP. CODE ANN. §§ 543.001, .004(a)(1) (Vernon 2011) (providing officer shall issue written notice rather than arrest).

14

appellant's car, however, he saw appellant making "a lot of furtive movements . . . towards the floor area and towards his leg area." Although the stop took place during the daytime, Sandoval noted that there was known "drug trafficking" in the area. And he asked appellant and his two passengers to exit the car. *See O'Hara*, 27 S.W.3d at 553 (noting, in routine traffic stop, officer may order driver and occupants out of car); *Champenois*, 874 S.W.2d at 257. Sandoval then performed a protective search of their waists "for weapons." *See Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *Davis*, 829 S.W.2d at 220. Furtive movement during a police stop is a factor that can give rise to reasonable suspicion justifying a continued investigatory detention. *See Kelly v. State*, 331 S.W.3d 541, 549–50 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *LeBlanc v. State*, 138 S.W.3d 603, 608 & n.5 (Tex. App.—Houston [14th Dist.] 2004, no pet.). And Sandoval explained that he waited for a back-up officer to arrive before performing a pat-down on the lower legs of the detainees because he was alone with them and "you never want to search down low when you're by yourself." The initial pat-down is not on the videotape in evidence, which was produced from the patrol car of the back-up officer, who arrived later. Sandoval did not explain whether, at that point, he had obtained appellant's license information, checked the information against his computer, or written a citation. *See Kothe*, 152 S.W.3d at 63–64.

The videotape does show that once the second officer arrived, Officer Sandoval searched appellant's car through the door of the driver's side for approximately twenty seconds. He then walked over to one of the passengers, lifted the passenger's pant leg out of his tennis shoe, viewed the area around his ankles, and directed him to remove his shoes. Sandoval then went to appellant, who was wearing long shorts, that draped over his ankles and covered his legs, and high-top tennis shoes, and who was standing with his hands on the trunk of his car. Sandoval placed a hand on appellant's back and used his foot to separate appellant's feet. Sandoval testified, and the video supports, that although he had intended to pat down appellant on his lower legs, he had not yet done so when he saw, partially hanging out of appellant's shoe, a clear, plastic bag, which he suspected, based on his experience and training, contained narcotics. When appellant began to back up, Sandoval restrained him against the trunk. He then directed appellant to remove his shoes and saw that the bag contained a white, powdery substance.

The State asserts that Officer Sandoval's search of appellant's ankle area was justified based on his earlier "furtive movements" and Sandoval was not required to terminate his protective search just because his earlier search of appellant's waist did not yield a weapon. It further asserts that Sandoval could

resume his pat-down until he "satisfie[d] himself that [appellant] ha[d] no weapons." *See Lippert v. State*, 664 S.W.2d 712, 721 (Tex. Crim. App. 1984).

The scope of a protective "*Terry* frisk" is a narrow one. When a protective search is warranted, the search must be carefully limited to that which is necessary to discover weapons that could reasonably harm the police officers or others. *Terry*, 392 U.S. at 25–26, 88 S. Ct. 1882. Generally, "once [a] pat down and search of [a defendant's] person produce[s] neither drugs nor weapons, the limit of the investigatory detention [is] reached, and further detention" of a defendant is "impermissible." *Autry v. State*, 21 S.W.3d 590, 592 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The safety justification for a continued search disappears once an officer knows or concludes that the relevant portion of clothing "contain[s] no weapon." *Clark v. State*, 444 S.W.3d 671, 676 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

In *Terry*, the United States Supreme Court also noted, however, that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous . . . , it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 392 U.S. at 24, 88 S. Ct. at 1881. The Texas Court of Criminal Appeals has commented that "[i]f in the course of a pat-

17

down frisk the officer satisfies himself that the suspect has no weapons, the officer has no valid reason to further invade the suspect's right to be free of police intrusion absent probable cause to arrest." *Lippert*, 664 S.W.2d at 721. Notably, one court has interpreted this to mean that "[t]he converse is also true; that is, if the officer has not satisfied his reasonable suspicion that the suspect is armed, then he has a right to make a more intrusive search to ensure that no weapon is accessible." *McAllister v. State*, 34 S.W.3d 346, 353 (Tex. App.—Texarkana 2000, pet. ref'd).

In *Spight v. State*, this Court recognized that, under some circumstances, a second search for weapons is permissible. 76 S.W.3d 761, 770 (Tex. App.—Houston [1st Dist.] 2002, no pet.). In *Spight*, a state trooper conducted a traffic stop of a defendant for speeding. *Id.* at 764. The trooper noted that it was late in the evening, the defendant seemed nervous, and he had been previously arrested on a weapons charge. *Id.* The trooper conducted a brief pat-down of the defendant for weapons and found a knife in his pocket. *Id.* A consensual search of the defendant's car yielded a large sum of money and, "[b]ased on [the defendant's] behavior," the trooper had a "heightened concern for his personal safety"; he, then, conducted a more thorough pat-down search of the defendant. *Id.* at 765, 771. We held that the subsequent pat-down search was not unreasonable under the United States and Texas constitutions. *Id.* at 771.

18

Here, Officer Sandoval explained after he had seen appellant making "a lot of furtive movement . . . towards his leg area," he did not initially complete a pat-down search of appellant's lower body because it was dangerous for him to do so while he was alone with three detainees. Thus, he decided that it was safer for him to wait for a back-up officer to arrive. And, after the back-up officer arrived, Sandoval began to resume his pat-down. However, Sandoval testified, and the videotape shows, that he had not actually patted-down appellant's legs before he saw the baggie hanging out of appellant's shoe. Rather, in order to facilitate a search, Sandoval merely used his foot to separate appellant's feet.

Appellant does not assert that Officer Sandoval had previously patted-down his legs. And this case does not present a situation in which an officer has conducted an exceedingly intrusive search. *See Clark*, 444 S.W.3d at 676 (noting safety justification for continued search disappears when officer "already knew" or "ha[d] concluded" that the relevant portion of clothing "contained no weapon"); *see also Davis v. State*, 829 S.W.2d 218, 221 (Tex. Crim. App. 1992) (holding officer not justified in opening matchbox under guise of searching for weapons).

Appellant notes that Officer Sandoval testified that he was not "worried about" appellant. However, "there is no requirement that a police officer feel personally threatened." *Glazner v. State*, 175 S.W.3d 262, 265 (Tex. Crim. App. 2005). And Sandoval did testify that he waited to finish his pat-down until after

the back-up officer arrived because it would have been dangerous for him to proceed alone.

Further, although Officer Sandoval testified that he was also looking for "narcotics," his subjective intent is irrelevant to our analysis. *See Garcia*, 43 S.W.3d at 530. That he may have had another subjective motive for searching appellant does not make his objectively reasonable search unlawful. *See State v. Gray*, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005) (citing *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769 (1996); *Crittenden v. State*, 899 S.W.2d 668 (Tex. Crim. App. 1995)). Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." *O'Hara*, 27 S.W.3d at 551.

Accordingly, we hold that the record supports the trial court's reasonable conclusion that Officer Sandoval's search did not exceed the scope of that which was necessary to determine whether appellant was armed. *See Terry*, 392 U.S. at 24, 88 S. Ct. at 1881.

Appellant next argues that Officer Sandoval did not properly seize the methylone from his shoe because he "was not in a position to trigger the 'plain view' exception to a search without a warrant." If, while conducting a legitimate *Terry* search, an officer discovers contraband other than a weapon, "he clearly

20

cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *See Michigan v. Long*, 463 U.S. 1032, 1050, 103 S. Ct. 3469, 3481 (1983). A seizure of an object is lawful under the plain view exception if: (1) the law enforcement official is lawfully where the object can be "plainly viewed," (2) the "incriminating character" of the object in plain view is immediately apparent to the official, and (3) the official may lawfully "access the object." *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). A law enforcement officer need not have actual knowledge that an observed item is contraband in assessing whether it constitutes evidence of criminal activity, but he must have probable cause to connect the item with criminal activity. *Texas v. Brown*, 460 U.S. 730, 741–42, 103 S. Ct. 1535, 1543 (1983); *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991). The officer may use his training and experience in determining whether an item seen in plain view constitutes contraband. *Brown*, 460 U.S. at 746, 103 S. Ct. at 1545; *Nichols v. State*, 886 S.W.2d 324, 326 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Here, while conducting a valid protective search for weapons, Officer Sandoval saw a "baggie," in plain view, hanging out of appellant's shoe. Thus, Sandoval was lawfully where the baggie could be "plainly viewed," and he could lawfully "access the object." *See Keehn*, 279 S.W.3d at 334. Sandoval testified that he stopped appellant in an area known for "drug trafficking," and, in his

21

experience, it is "typical" for people to store narcotics in plastic bags to keep them dry. He further noted that "[a] lot of times they do hide narcotics inside their shoes." Sandoval did not have to know that the baggie contained contraband before seizing it; his reasonable belief that it contained contraband was sufficient. *Brown*, 460 U.S. at 740–42, 103 S. Ct. at 1542–43; *Joseph*, 807 S.W.2d at 308. Sandoval's experience with narcotics, along with his testimony that he saw the baggie during the traffic stop, supports the trial court's finding that Sandoval saw the bag in plain view and had probable cause to believe that the bag contained narcotics. *See Laws v. State*, No. 01-09-00431-CR, 2010 WL 2133925, at *3 (Tex. App.—Houston [1st Dist.] May 27, 2010, no pet.) (mem. op., not designated for publication); *see also Nichols*, 886 S.W.2d at 326.

Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress evidence.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgments of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).